## SPERRY & HUTCHINSON CO. v. MECHANICS' CLOTHING CO.

(Circuit Court, D. Rhode Island. November 29, 1904.)

### No. 2,651.

1. TRADING STAMPS—ADVERTISING—INTERFERENCE WITH COMPLAINANT'S BUSINESS.

The bill alleged that complainant issued trading stamps for advertising purposes, which it sold to merchants under a contract providing that when the stamps were so issued they should be redeemed by complainant in goods; that complainant's income was derived solely from the sale of the stamps to merchants who issued the stamps; that the only promise made to the public by complainant was that it would redeem stamps procured from merchants authorized by complainant to issue them; that defendants obtained large quantities of such stamps by means of collectors, etc., and reissued them to defendants' customers in such quantities as they chose, without having any contract with complainant. On demurrers to bill, held, that complainant had the right to restrict the use of the stamps by contract, and the stamps, having been once issued by a merchant, were functus officio. except for redemption, and, though transferable for that purpose, defendants' use thereof was an improper interference with complainant's business, which complainant was entitled to restrain.

In Equity. Defendants' demurrers to portions of the bill of complaint.

See 128 Fed. 800.

W. Benton Crisp, John S. Murdock, and Tillinghast & Murdock, for complainant.

Edward D. Bassett and Wilbur A. Scott, for defendants.

BROWN, District Judge. By demurrers to portions of the bill, the defendants seek to raise the question of their right to buy and to reissue trading stamps in substantially the same manner in which they are issued by merchants who by special contract with the Sperry & Hutchinson Company are authorized to issue the stamps. Passing objections to the form of the demurrers we may consider the substantial question.

Upon consideration of the allegations of the bill as to the nature of the trading stamps, it is apparent that the only purpose for which they are issued to collectors is for redemption; that the only promise made by the Sperry & Hutchinson Company to the public in relation to these stamps is that it will redeem them if procured from authorized merchants; and that the collector acquires only such rights as are expressly or by fair implication promised him by the company.

We may assume, since counsel for the complainant concede it, that a collector of trading stamps may transfer them to others for the same purpose for which they were originally issued, namely,

for redemption. We may assume that the defendants have the right to purchase trading stamps from collectors who have acquired them from authorized merchants, and, as the assignees of the collectors' rights, to present them for redemption. Does it follow that they may reissue them anew as cash discounts, or as premiums for cash purchases, according to the general method of merchants authorized by the company to issue such stamps?

Ordinarily one who has a right to transfer property may do so upon such terms and conditions as he pleases, and may, if he likes, give it as a bonus for a sale of other property. In the opinion on the petition for a preliminary injunction (Sperry & Hutchinson Co. v. Mechanics', Clothing Co. [C. C.] 128 Fed. 800, 803), this court said:

"As any merchant may give to customers premiums in the form of goods or car tickets, it is difficult to see how he can be restrained from giving also these stamps, though they were issued by the complainant."

This difficulty disappears, I think, upon a fuller consideration of the case.

A trading stamp is not ordinary property. It is sui generis. It represents a somewhat complicated transaction, and, from its nature, I think there are necessary limitations upon the modes in which it may be transferred. By extensive advertising, by promises to the public, by the exhibition of goods, by the circulating of books, like Exhibit C, giving a general description of the business, the Sperry & Hutchinson Company creates a demand for the trading stamp. By contract between the complainant and the merchant, the title to the stamp does not vest in the merchant who issues it, but remains in the company until it has been issued in regular course to a customer of the merchant. The customer is expressly offered only the right to redeem the stamp, and impliedly the right to transfer it for redemption. A stamp is not merely a token of the company's obligation to redeem it, and of the right of the holder to redemption, but it is also a token or an instrument of another transaction in which the trading stamp company has an interest, and from which it derives its entire profit and its recompense for its outlay in establishing the business. The trading stamp company, having created a demand, in effect, sells to the merchant the right to supply this demand, and to issue to his customers stamps which are at the time of the issue the property of the Sperry & Hutchinson Company. The merchant, in a certain sense, is the agent of the company in issuing the stamps to the public. The merchant gets such trade advantage as results from his distribution of the stamps. He pays the trading stamp company for this in proportion to the use that he makes of the trading stamps, paying so much a hundred for the use of the stamps. In the transaction between the company and the merchant, the stamp, once issued, represents so much advertising furnished and paid for. Once issued by the merchant, it is functus officio as a token of the sale and use of so much advertising.

The trading stamp, when issued, represents a closed transaction between the merchant and the company, as well as an outstanding obligation to redeem the stamp. As a token or voucher of the sale

and use of so much advertising, the trading stamp is necessarily a consumable article—an article designed for a single use in an advertising scheme. What the defendants wish to do is to procure for themselves a trade advantage as distributors of trading stamps. Although the stamps have been issued to collectors for a limited purpose, the defendants desire to use them for a purpose for which obviously they were not intended in the hands of a collector. The number of trading stamps ordinarily issued to a purchaser of merchandise hardly could be sufficient for advertising purposes. The defendants have devised the scheme of procuring from individual collectors a very large number of the stamps, and, by uniting in a single hand what ordinarily would be distributed in many hands, they secure a supply sufficient for advertising purposes. In other words, as transferees of the rights of persons who did not acquire these stamps for advertising purposes, they secure for themselves the ability to do what it was not intended that a collector of the stamps should do. The trading stamp company has made large expenditures to create a demand, and, although its sole source of profit is in the sale of rights to supply this demand, the defendants, who have not paid the trading stamp company for this right, assert that they have acquired it equally with those merchants who have paid for it. By reusing the stamp as an advertisement, they seek to get for nothing what others are required to pay for, and to institute a destructive competition with authorized merchants, which tends to destroy the value of the stamp and to injure the complainant's business.

The trading stamp is an artificial creation. The company, having created it and having created a value for it, may dispose of it on such terms as it sees fit. It may in the first instance restrict the right to issue it for advertising purposes to such persons as it may select, and to such persons as are willing to pay for it. The public is entitled to receive it upon the terms offered, namely, that it is exchangeable for goods. But, it is asked, why, if the right of a customer to transfer it is conceded, may he not transfer it in any mode he pleases, and give it as an advertisement if he sees fit? A sensible answer to this question, I think, is this: Because he thereby appropriates to himself the trading stamp company's legitimate share of the transaction. In the trading stamp scheme or plan, as explained in the books, there are designed to be three parties—the customer, the merchant, and the trading stamp company. The customer is to acquire, as his benefit, a redeemable stamp; the merchant is to acquire, as his benefit, a trade advantage resulting from issuing the stamps at his shop; the trading stamp company's benefit is the money paid to it by merchants for the privilege of issuing the stamps. While the full details of the contract between the merchant and the trading stamp company are not explained to the public, they are sufficiently explained, according to the allegations of the bill, and as appears from Exhibit C, made a part of the bill, to show that the trading stamp scheme is a three-cornered transaction, in which the rights of three parties are involved.

The defendants' counsel argues the case on the theory that we

may disregard entirely the rights of the trading stamp company and merchant, and that, although both of these parties have expended their money in the expectation of a benefit, this benefit may be destroyed by the defendants. By the explanation to the public contained in the trading stamp book, Exhibit C, the collector is told what he is to have and what the merchant is to have; and, being thus informed, it is contrary to equity that he should appropriate what he is told is the merchant's benefit in the transaction. A reason why the defendants should not be permitted to reissue these stamps as cash discounts or premiums is that, according to the allegations of the bill, they knew that they were issued to customers for a certain purpose—that is, for redemption; that they could acquire no greater right in the stamps than the customers had; and that, if they did reissue them, they were appropriating for themselves, and without consideration, what fairly belonged to the merchant and to the trading stamp company. I accept the following statement from the complainant's brief:

"When once given out by a merchant, they have served the advertising purpose for which they were intended, and to permit the collector of the stamps to again advertise with them would be to go beyond what was the clear intention of the parties, and would be destructive of the rights of the complainant."

While a transfer of ordinary property by the owner upon any terms usually deprives other persons of no rights, this is not always the case with the trading stamp. While it may be transferred in any way which confines its use within the purpose for which it was issued, it may not be transferred in such a way as to destroy its value as an instrument of special trade advantage or advertising, or as to deprive the company which created the value of the stamp, and which has assumed the obligation to redeem it, of its right to compensation for expenditures and for redeeming the stamps.

In my opinion, the bill states a case for full relief against the defendants. It charges positive fraud and misrepresentation in conjunction with the collection and reissue of these stamps. As these matters are dealt with in the opinion on the petition for a preliminary injunction, it is not necessary to repeat. Upon such a bill a court of equity may give full relief, and the complainant, in my opinion, is entitled, upon the allegations of the bill, not only to restrain fraudulent misrepresentations, but also to restrain the diversion of the trading stamp from the purpose for which it was issued, and the appropriation by the defendants of what they have not paid the complainant for, and what they did not receive as assignees of the rights of the original collectors of the stamps.

In National Tel. News Co. v. Western Union Tel. Co., 119 Fed. 294, 56 C. C. A. 198, 60 L. R. A. 805, the Circuit Court of Appeals for the Seventh Circuit said:

"In short, the law being clearly inadequate to that purpose, equity should see to it that the one who is served and the one who serves each gets what the engagement between them calls for, and that neither, to the injury of the other, shall appropriate more."

While the circumstances of that case are somewhat different from those of the case before us, I am of the opinion that the principles upon which the court acted in that case are applicable to the present case.

Demurrers overruled.