WEST BOYLSTON MFG. CO. et al. v. WALLACE.

(Circuit Court, D. Massachusetts. May 10, 1905.)

No. 1,725.

PATENTS—TENTING CLOTH—VALIDITY—NOVELTY.

Patent No. 718,499, for tenting cloth, to be used to cover tobacco and other plants, *held* void for want of novelty, both in the elements used to constitute the product, and in the combination thereof.

Harrie E. Hart, for complainants.
Richardson, Herrick & Neave, for defendant.

HALE, District Judge. This suit in equity is brought for the infringement of letters patent No. 718,499, issued to Ariel Mitchelsen

on January 13, 1903, for tenting cloth. The invention relates to the growing of tobacco, an industry which is now carried on in the Connecticut Valley. In this industry, it becomes necessary to cover the tobacco plants with tenting cloth. It has been found that the soil of certain parts of the Connecticut Valley is adapted to the raising of a tobacco leaf for wrapper purposes. To get the best results, it has been found necessary to grow the tobacco from which this leaf is produced under a cover, in order to afford a protection to the crop against the effects of the severe wind, hail, and rain storms which frequent the Connecticut Valley. A cloth was required to cover a large field of tobacco. The principal requirements of the cloth were that it should permit free access of the sun and moisture to the plants underneath; that it should distribute the moisture evenly over the ground, and at the same time be strong enough to act as a substantial protection to the crop in times of storm. For this purpose cheese cloth was first used. This was not heavy enough, and afterwards a cloth known to the trade as "G. B. Cloth" was used, which was somewhat heavier and stronger than the cheese cloth, and of more open mesh. This G. B. cloth was a staple article of manufacture used by buckram makers in manufacturing hats and caps, and was not altered in any way when used to cover tobacco fields. The method of covering the field with tenting cloth is substantially as follows: A framework is erected, comprising rows of wooden posts set 16½ feet apart, and extending 9 feet above the ground. Stringers set on edge are secured to the tops of the posts in each row. The cloth is woven of such a width that when drawn taut its edges will come on the tops of the stringers, where they are secured by staples or by looping the edges over hooks. Around the sides of the field a baseboard is provided, and cloth is run from the top of the tent to this baseboard, forming side walls.

The patent in suit is described in the specification as being for "certain new and useful improvements in tenting cloths, by which term is meant cloth adaptable for use as a protecting cover over fruits, vegetables, etc., which are grown out of doors, and particularly for a cover for growing what is known as 'shade-grown tobacco.' * * * The cloth, which is especially prepared for these uses, is manufactured specially of extra width, and is put up in considerable lengths, supported on a framework of some sort."

To show precisely to what end the patentee was working in order to produce the product which he has patented, we quote quite fully from the specification:

"The cloth which up to this time has been used for this purpose is in a majority of cases what is commonly known as 'cheese cloth,' being a loosely woven fabric. It has been found in practice that this cloth is not practical for such uses, for the reason that it is not strong enough to resist the excessive strains put upon it in times of wind, rain, or hail storms. The covers, when made of this material, have in many cases been entirely ruined, for the reason that, if a small tear is started, there is nothing to stop its being enlarged when the wind gets under the cover. * * * But in addition to the storm-resisting feature, which is necessary in tenting cloths, there are other important qualities which it is absolutely essential the covers shall have to be adaptable for this use. They must be loosely woven, so as .

to allow the penetration of the sun and the sieving of the water equally over the ground, and also hold the sun's warmth, in order to bring about, as near as possible, tropical conditions. * * * These serious defects in the fabrics which are used at the present time as tenting cloths have deterred many from undertaking the growing of plants under cover, because of the liability of the destruction of their covers, and those who have undertaken the growing under covers have been subject to so much extra expense on account of the destruction of their covers that the profits on their labors have been materially reduced. Having knowledge from actual experience of the many defects of the cloth used at the present time for tenting purposes, I have devised the herein described and illustrated tenting cloth, which has all of the necessary features as to the admission of sun, rain, etc., and which is suitably strengthened, so that it will successfully withstand unusual strains put upon it in times of storms. * * * The main body of my fabric is loosely woven, as shown at C, in order to permit of the admission, under proper conditions, of sun and rain. * * * One part of my invention resides in the peculiar construction of the selvage edges, as is clearly illustrated in the drawing. Instead of the ordinary selvage, as the term is commonly used, I make a selvage of substantial breadth at each edge of the cloth, and in this selvage I incorporate a number of cords or threads, which are of substantially larger size than the threads of the fabric. These cords are preferably arranged near one another, as shown at E, and are woven into the fabric. It should be understood that these cords are distinct and separate from the selvage proper. At intervals along the fabric it is strengthened by increasing the number of weft threads as indicated at G. The ends of these weft threads are woven about the cords, E, which form a substantial anchor to support and hold them. The effect of this construction is to produce a fabric which in the main is loosely woven for the purposes already specified—especially for the diffusion of light and the spreading of the rain—and which is strengthened in a peculiar manner in rectangular sections. The particular advantage derived in the use of such a tenting cloth arises from the fact that when a small tear occurs in any one of the rectangular sections, and is enlarged by any extraordinary strain, it can extend only as far as the selvage edges or the strengthened weft sections. When the tear reaches the strengthened weft sections, of course there is considerable strain brought on these weft threads; but they, being woven about the cords in the selvage, are firmly anchored and capable of withstanding the strain."

The sole claim in the patent is as follows:

"The herein-described improved tenting cloth, having a body part formed of loosely woven warp and weft threads, said weft threads being increased in number at intervals, the warp threads being increased in number at the edges of the fabric, and strengthening cords of greater size than the said warp threads arranged at the edges of the fabric."

The four elements of the claim, then, are, first, the body portion of loosely woven warp and weft threads; second, the weft threads increased in number at intervals, so as to form strips of greater strength than the body of the material; third, the warp threads increased in number at the edges of the fabric to make a substantial selvage; fourth, the strengthening cords of greater size than the warp threads, arranged at the edges of the fabric.

The principal defense relied upon is that the patent is devoid of novelty. The patent is upon a product or structure. It is urged that this structure does not present any features which are novel, in view of the cloths which had been in use at the time of the issue of the patent. The testimony tends to show that there had been used in the neighborhood of the patentee, and with his knowledge, loosely woven cloth with increased warp threads, forming a selvage, and that this selvage was sewn around a strengthening cord.

This selvage was of a narrow character, but it is urged that the patent does not call for any particular width of selvage. The testimony shows that the cloth in use contained every substantial feature of the patentee's cloth, excepting the strengthening strips across the weft. Another feature of the tenting cloth which constitutes the product of the patent is the strengthening cords in the selvage, of larger size than the warp threads. It is urged that these strengthening cords have no other function than the strengthening cord around which the selvage was sewn in the cloth in use before the issue of the patent.

By examination of the progress of the patent through the Patent Office, it appears that the claim as originally presented in the patent was at first rejected on reference to a former British patent. The words upon which the rejection was based were in claim 3:

"A loose woven textile fabric having cords incorporated in the selvage, and also having at intervals an increased number of weft threads engaging such cords, substantially as described."

The claim was finally approved and the patent granted upon the claim being amended so as to specify that strengthening cords are of "greater size than the said warp threads." It is urged in behalf of the defendant that this action of the Patent Office makes it apparent that an increase in number or density or closeness of the warp threads, without an increase in size, as compared with those used in the main body of the fabric, is not patentable, especially in view of the state of previous knowledge upon the subject, as shown by former patents, and as shown by the examination of former fabrics. It is urged that such increase in number or density or closeness of the warp threads is not the same as cords of greater size than the warp threads, even though the increased number or density of the warp threads may serve functionally the same purpose of increasing the strength of the fabric at the point where they are used. In reference to the use of strengthening cords in the selvage, the testimony shows that Mr. Mitchelsen, the patentee, was fully advised before obtaining his patent that the use of a cord in the edge of tenting cloth was old. There can be no doubt but that one Pinney used the G. B. cloth with cords arranged at the edge as early as April, 1901.

With regard to the increase in number and density or closeness of the weft threads, thereby making strips or bands of increased strength across the cloth, it is insisted that this use is old, it being found in mosquito netting and in other fabrics brought before us.

We cannot escape the conclusion that every element of the tenting cloth which constitutes the product for which the patent in suit is obtained is old. Is there such a combination of old elements in the product brought before us as to produce a new result?

In the history of the art of growing tobacco under cover, cheese cloth was at first used. Afterwards the G. B. cloth was the fabric employed by tobacco growers for this purpose. This cloth was an improvement upon cheese cloth. The fabric brought before us in the patent in suit is an improvement upon G. B. cloth. But

every improvement in an article is not patentable. Such improvement must be the product of an original conception and of an inventive thought. Is the fabric before us the product of an original conception and of an inventive thought? In this case, a combination patent for a product is claimed. The combination is, as we have said, first, the loosely woven warp and weft threads forming the body of the fabric; second, the weft threads increased in number at intervals, forming strengthening bands across the cloth; third, the warp threads increased in number at the edges, forming a stronger selvage; and, fourth, the strengthening cords of greater size at the edges of the fabric. It is apparent that every element in this combination is old. Do the old elements, when brought together, produce a new result? This test may be applied to a patent on a machine more readily than in case of a product patent. It can generally be decided whether any old element in a machine, when brought in combination with other elements, continues to perform its old function, or whether it produces a new result. But in case of a product, namely, of a fabric constituting a patent, it can never be invention to add an element like a strengthening cross-band which simply performs its old function. Such strengthening bands across a fabric were unquestionably old. It is difficult to see how they achieve any new result in the combination in which they are placed in the patent in suit. So with reference to the larger strengthening cords in the selvage. This introduces no new element; and we cannot see how the combination of this element with the other elements of the fabric produces any new result. Undoubtedly an improvement is made in the cloth, in that it is made convenient for use over large fields, covering many acres. In Dalton v. Jennings, 93 U. S. 271, 23 L. Ed. 925, the patent was for an alleged improvement in ladies' hair nets. The court said:

"If the netting patented by appellant had been produced by him for the first time, it would be difficult to find in it, or in the process by which it is made, anything deserving the name of invention, within the meaning of the patent law. If the spaces between the threads of the netting were too large, thereby permitting the escape of the hair, there is nothing new in the idea that making them smaller would remedy the evil. If the size of the threads then in use was too large for beauty, neither discovery nor invention were necessary to reduce it. There is nothing new in the number of these threads, in their size, nor in the manner in which they are crossed and connected. Where, then, is the invention? Is it in the fact that some of the threads are coarser and some of finer size? This can hardly be invention, since gauze and netting have been made with threads or cords of unequal size time out of mind, and with varying and equal or unequal spaces between them. * * * It is impossible to call the hair net or netting for which the appellant claims a patent a new invention, or any invention of his."

In Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241, the structure before the court was a stove; and the court held that it was not invention to merely bring together old devices in a stove, but that it was mere aggregation. Mr. Justice Strong, speaking for the court, says:

"A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in com-

mon use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. * * * Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect, without the production of something novel, is not invention.".

In the Faber India Rubber Pencil Case, 92 U. S. 357, 23 L. Ed. 724, Mr. Justice Hunt says:

"The combination, to be patentable, must produce a different force or effect or result in the combined forces or processes from that given by their separate. parts. There must be a new result produced by their union. If not so, it is only an aggregation of separate elements. An instance and an illustration are found in the discovery that, by the use of sulphur mixed with india rubber, the rubber could be vulcanized, and that without this agent the rubber could not be vulcanized. The combination of the two produced a result or an article entirely different from that before in use."

This illustration made by Mr. Justice Hunt affords a typical instance of a product patent, where a combination is found to be patentable because it produces an entirely different result or article from anything which had been before in use. In Florsheim v. Schilling, 137 U. S. 64, 11 Sup. Ct. 20, 34 L. Ed. 574, the Supreme Court held that an improvement in corsets, bringing together various old elements, was not a patentable invention. Mr. Justice Lamar says:

"The argument is advanced that the combination in this corset of the prior inventions secured and put into use by prior patents, making it a superior and cheaper article, is itself a patentable invention. We are unable to agree with appellant's counsel on this point."

The court in that case cites Burt v. Evory, 133 U. S. 349, 10 Sup. Ct. 394, 33 L. Ed. 647—a leading case upon a patent for a structure, where the court held an aggregation of old parts not to involve any new principle, and not to be patentable. In Dalby v. Lynes (C. C.) 64 Fed. 376, Judge Putnam, in this circuit, held a patent for an improvement in underwear to be invalid for want of invention. He says:

"A novelty involving a state of art so universal and common as the making an adjustment of clothing must be of a radical character to overcome the presumption against its patentability."

In Gandy v. Main Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272, a patent was sustained by the Supreme Court upon an improved belt for driving machinery, and on an improved mechanical process of manufacturing the belt. Prior to the invention, ordinary sail canvas was used for belting. This was found to be impractical on account of its liability to stretch or crack in passing around pulleys. Soft canvas was found to stretch. A hard-spun, tight-woven canvas, specially manufactured for the purpose, was used. This did not stretch, but would wrinkle and crack when running around pulleys. This objection was obviated by saturating the belt with linseed oil; but an objection was disclosed in the unequal strain on the several thicknesses of the belt when passing around pulleys, which tended to break the stitches and permitted the plies to separate. The patentee's invention consisted in changing the structure of the canvas itself. He used a tightly woven

canvas, having its warp threads larger than the weft threads; the fabric being folded and stitched. By this construction, strain was equalized on all parts of the belt, and the tendency of the plies to separate or wrinkle was diminished. Mr. Justice Brown, in speaking for the court, said:

"In view of the fact that previous attempts, of which there appear to have been several, to make a practical canvas belt, had been failures, and that Gandy had been experimenting with the subject for several years before he discovered that a change was necessary in the structure of the canvas itself, we do not think his improvement is a change in degree only, or such a one as would have occurred to an ordinary mechanic, and our opinion is that it does involve an exercise of the inventive faculty."

This case has been brought before the court, with great insistence, as an authority in the case at bar. But the court found in the Gandy Case that there was a new result produced by the union and combination of old elements. It found that there was a patentable combination, and not a mere aggregation of separate elements; that the inventive thought of the patentee had produced a result entirely different from that before in use, precisely as in the illustration given by Mr. Justice Hunt, in the Faber Case.

The learned counsel for defendant has brought before us other leading cases involving patents upon fabrics and structures, where courts have sustained patents upon products. Without discussing these cases in detail, we think that the court has held the patents in these cases to be valid for reasons such as were present in the Gandy Case, and such as met the illustration of the Faber Case. We do not find in the case at bar such reasons for holding the patent to present a patentable invention. After a careful study of it, we cannot find that it presents anything further than an aggregation of old elements, each element working out its own effect without the production of anything novel.

Applying the principles of the cases cited, and calling to our aid the well-known principles of patent law as applied to patents upon fabrics, we come to the conclusion that the patent in suit does not present any original conception or inventive thought. The product constituting the patent is, in the opinion of the court, an aggregation of old devices, each device maintaining its old function, and producing nothing novel or patentable. In our opinion, the fabric brought before us in this patent cannot be held to be a new invention.

Bill to be dismissed, with costs.