SPERRY & HUTCHINSON CO. v. LOUIS WEBER & CO.

(Circuit Court, N. D. Illinois, E. D.    April 22, 1908.    On Rehearing, May 11, 1908.)

No. 28,938.

INJUNCTION—INTERFERING WITH CONTRACTS—TRADING STAMP BUSINESS.

Complainant issued trading stamps to merchants under contracts providing that they should be given out only to cash customers as premiums on purchases, and when presented by such customers in books would be redeemed by complainant in goods. They were nontransferable on their face, and the books were supplied by complainant, and contained advertisements of the merchant's business. *Held*, that the business and contracts were lawful, and that complainant was entitled to protection by injunction against a rival in the business, which sent out agents to purchase or exchange its own stamps for partly filled books containing complainant's stamps, some of which were again resold at a low price, materially interfering with complainant's business.

In Equity.    On motion for preliminary injunction.

Peckham, Packard, Ap Madoc & Walsh (John Hall Jones, of counsel), for complainant.

Newman, Northrup, Levinson & Becker, for defendant.

KOHLSAAT, Circuit Judge.    The bill herein is filed for an injunction, restraining the defendant and its representatives from "buying, selling, procuring, disposing of, or otherwise dealing or trafficking in the trading stamps issued by the Sperry & Hutchinson Company * * * and from advertising so to do." The cause is now before the court on a motion for a preliminary injunction, and for other relief. Complainant is engaged in the business of manufacturing and selling to its customers what are known as trading stamps. These are supplied under and subject to the terms of a written contract, which reads as follows, viz.:

"This agreement, made the ———— day of ————, 190—, by and between the Sperry & Hutchinson Company, a corporation of the state of New Jersey (hereinafter called the 'Company'), party of the first part, and ————, a ———— of ————, doing a general ———— business at ———— street, ————, state of ————, party of the second part, Witnesseth: That in consideration of the mutual promises and agreements hereinafter contained, said parties agree as follows: Said company agrees to advertise in the directory of its 'S. & H.' green trading stamp books distributed in the city or town of ————, the name, business, and aforesaid business address of the party of the second part; to deliver to the people of said city or town said books, and explain to them how to use the same; and to redeem said stamps with goods and merchandise when presented by the customers of its subscribers in said books in lots of nine hundred and ninety (990) stamps, and according to law, collected in the manner prescribed and subject to the conditions herein and in said books. Said company agrees to deliver, and the party of the second part agrees to order and receive from said company, its green trading stamps, in lots of not less than ———— pads per lot, each pad containing ———— thousand stamps, and to pay upon delivery thereof, the sum of ———— dollars per pad, for the use of said stamps as an advertising medium, and agrees to supply said stamps from the aforesaid business address only, as an inducement for cash trade to all persons who pay cash for purchases; to give out said stamps as follows, and not otherwise to dispose of the same without the prior consent in writing of said company, viz.:    To give to each

customer for redemption only by said company one stamp for each and every ten cents represented in the retail price of merchandise, for which cash is paid by said customer. Said party of the second part also agrees to display signs furnished by said company, which read, 'We give S. & H. green trading stamps,' or otherwise in the windows and other prominent places about its stores, and agrees not to procure said stamps in any way except direct from said company, either during the term of this contract, or at any time, and also agrees to mention favorably the use of said stamps in all newspaper and other advertisements published by or for it; and not to use any other coupons, trading stamps, or similar device during the term of this contract, and not to join in any combination of merchants for the purpose of discontinuing the use of said company's trading stamps. It is mutually agreed between the parties hereto that the property in and title to said stamps and signs remain in the said company, and shall not in any event pass to the party of the second part, or any other person, firm, or corporation and that this agreement shall remain in force for one year from the date of its execution, and shall be considered renewed for an equal period from year to year, unless written notice to the contrary. be given by either party to the other at least thirty (30) days prior to the yearly periods of expiration; and, provided such notice be given by said company, it may thereafter omit from its subsequently printed directory and advertisements the name of the party of the second part. It is mutually understood and agreed that this contract is made for the benefit of the subscriber's customers as well as of the parties hereto.

"In witness whereof, the parties hereto have executed the foregoing agreement the day and year above written.

"The Sperry & Hutchinson Company,<br>"By ————.

"N. B.—No agent has authority to alter the foregoing agreement in any way. No alteration therein shall be effective unless countersigned by an officer of the company at the home office, 320 Broadway, New York City."

Each stamp has printed on its reverse side the following, viz.:

"Property of the Sperry & Hutchinson Co. Not transferable except as provided in notice in trading stamp book."

On the cover of the book, in large letters, are the words:

"CAUTION. THIS PAD IS NOT TRANSFERABLE."

The method of transacting business is as follows, viz.: The stamps are delivered to merchant subscribers in pads or books of 1,000 or 5,000 each, for a certain consideration. Upon receiving the same the customer subscribes the following:

"Conditions Under Which 'S. & H.' Green Trading Stamps are Furnished: Solely for the advertising of the company's subscribers, and for redemption by their customers. The title to all Sperry & Hutchinson green trading stamps remains in the Sperry & Hutchinson Company; the subscribing merchant transfers only the right of redemption to his customers. Once issued by subscribers, the stamps cannot again be used for advertising purposes."

It is alleged by the complainant, and not disproven, that complainant and its predecessors originated this method of advertising, as it is termed in the bill, and that large sums of money and great labor have been expended in perfecting and popularizing it; so that at the time the bill was filed its green trading stamps had become widely known as a valuable medium for advertising. As a part of the benefit to its subscribers, complainant causes circulars to be distributed, house to house canvasses to be made, and the attention of customers to be attracted to the subscribers' business, thus taking the place, to a degree,

or supplementing ordinary advertisements. The subscriber is authorized to issue one stamp with every 10 cent cash sale. By this means, it is claimed, cash trade has been greatly improved, as well as sales generally. A trading stamp book is furnished by the complainant, in which purchasers who receive stamps may paste them. These hold, approximately, 1,000 or more stamps when filled. Complainant redeems the stamps at a rate not stated in the record. Whether or not there is a profit in the redemption to the complainant arising from the price paid for the stamp book by the subscriber, or whether it is expected that any considerable part of the stamps will never be presented for redemption, so that gain would arise from that source, is not shown.

It is the essence of complainant's business that its subscribers shall get the full benefit of its methods of advertising and assistance. Its stamps are not, in the full sense, property. Their nontransferability is an essential element of their value, both to complainant and its subscribers. It may be assumed that both parties are in the transaction for profit. It is not fair to say that complainant's only interest consists in the presentation of the stamps for redemption, if the means employed to that end result in killing the demand of subscribers for the stamps. The parties are entitled to carry on their affairs in such a way as to serve the business interests of each, so long as they are lawfully conducted. To create an unfair market for partly filled and nontransferable stamp books would have a tendency to keep purchasers from trading with subscribers until they were filled. This has been held in a number of cases instituted by complainant to protect its business. Among these are the Cases of Mechanics' Clothing Company (C. C.) 128 Fed. 800, 1013 (same in [C. C.] 135 Fed. 833), Brady (C. C.) 134 Fed. 691, Beal (C. C.) 145 Fed. 659, Asch (C. C.) 145 Fed. 659, and Temple (C. C.) 137 Fed. 922. In addition there are unpublished opinions and decisions to the same effect by Judge Morris of Baltimore, Judge McPherson, Eastern district of Pennsylvania, Judge Thomas, Eastern district of New York, and Judge Lacombe, Southern district of New York.

The defendant, in pursuit of its business advancement, entered upon a course of conduct logically calculated to injure complainant. It sent agents around to purchasers from complainant's subscribers, and by various representations sought to and did induce them to exchange their incomplete stamp books for defendant's trading stamps, taking three of complainant's, known as "Green Stamps," for one of its own. It does not appear what inducement was offered for the exchange, further than counsel's statement, to the effect that defendant offered a more desirable class of goods for redemption than the green stamps commanded, and fixed the purchasable value of its stamps. It is also asserted that defendant made endeavors to persuade complainant's subscribers to break their contracts, and offered inducement to that end. In fact, it is made to appear that defendant made the manipulations of complainant's stamps, and interference in its contracts and business, a special feature of its own business, so much so that, as the record now shows, it cannot be definitely determined whether or not such injury to complainant was not the controlling motive in the plan. And all this, notwithstanding the fact that these stamps were good only for re-

demption, and not transferable. Under the decision of the Supreme Court in Angle v. C., St. P., etc., Ry. Co., 151 U. S. 1, 14 Sup. Ct. 240, 38 L. Ed. 55, this constitutes actionable wrong. It further appears that defendant was thus able to resell the stamps to complainant's subscribers at a much lower price than complainant could, though it does not seem to be established that this was actually done to any great extent. It does appear that defendant sold them to brokers, who took that course in some instances, and in others presented them for redemption in large lots. There does not seem to be any reason why the facts herein do not bring the case within the spirit of the decision in Bitterman v. L. & N. R. R. Co., 28 Sup. Ct. 91, 52 L. Ed. ——, decided by the Supreme Court in January, 1908. In this case the court cited, with approval, the case of the complainant against the Mechanics' Clothing Company, above mentioned. For reasons stated in the Bitterman Case there is jurisdiction in equity to take cognizance upon the facts hereof. Here is no mere competitive course of action. It was open to defendant to issue its stamps and induce cash sales, just as complainant did, through another or on its own account. There was no need for it to prey upon complainant's trade. Its course in this respect would seem to fall little short of malicious, and may be said to constitute a clear case of unfair competition. True, complainant was not bound under its contracts to redeem for any one but bona fide purchasers from its subscribers, but, as said by Judge Putnam, in Sperry & Hutchinson Co. v. Temple, supra:

"It would be impracticable for the complainant to discriminate between stamps properly issued by merchants with whom it deals and other stamps which come upon the market."

It is claimed for defendant that complainant had itself indulged in the practice of procuring the trading stamps of others, and that it does not come into court with clean hands. The evidence on this point shows that in some instances this has been done, but that no attempt has been made by complainant to place such stamps on the market or do anything else therewith. No fraudulent intent is shown, and there are decisions which seem to approve of it. No such action has, however, been pursued toward defendant herein, and it is not in position to press this point as a defense. Camors-McConnell Co. v. McConnell (C. C.) 140 Fed. 412; Equitable Gas Light Co. v. Baltimore Coal-Tar & Mfg. Co., 65 Md. 73, 3 Atl. 108; Foster v. Winchester, 92 Ala. 497, 9 South. 83; Mossler v. Jacobs, 66 Ill. App. 571; Pom. Eq. Jur. (3d Ed.) § 399; Beekman v. Marsters (Mass.) 80 N. E. 817, 11 L. R. A. (N. S.) 201 (April, 1907). Even were the law not so, the facts in this case are not such as to justify the enforcement of the rule.

The whole case considered upon the present record, complainant is entitled to the temporary relief prayed for. I think any and all trafficking in these nontransferable trading stamps by it should be enjoined. Complainant may prepare a decree in accordance herewith.

## On Rehearing.

The motion of complainant for a preliminary injunction having been argued orally before the court on the 11th day of February, 1908,

and written briefs having been thereafter submitted by both parties, and the court having considered the bill of complaint and the affidavits and exhibits filed therewith, and also the affidavits of Isaac Connart, James F. Gannon, Mrs. M. Karras, Marie Lucas, and Kennie Leroy, filed by the defendant on the 25th day of January, 1908, the affidavit of Jacob Weber, filed by the defendant on the 11th day of February, 1908, the affidavits of J. Edward Newberger, Isaac Connart, H. H. Kane, Samuel Steinberg, H. Sendram, W. A. Mott, M. E. Fowler, Mrs. T. Manning, George Hanlon, William Gleich, J. M. Whipple, S. T. Rush, M. Johnson, S. Salmon, H. F. Narhoefer, Nathan Foster, Mrs. L. Nyham, J. Knox, Edward Murray, James Grogan, Julius Waterman, David Teplitz, John Dunn, A. Baker, C. M. Dobbs, Charles Gregory, John Wilson, K. Rubenstein, Schuhman, Joseph Killpatrick, E. Anderson, David Liefly, and M. A. Connell, filed by the defendant on the 2d day of March, 1907, and the affidavits of Manuel Munoz, J. F. Gannon, Albert Wallace, Lawrence A. Jackson, Thomas H. Flather, Marcus B. Keyman, Lester Gordon, and Lionel E. Ogden, filed by said complainant on the 7th day of February, 1908, and the affidavit of James F. Gannon filed by said complainant on the 11th day of February, 1908, and the affidavits of Albert Wallace and James F. Gannon, filed by said complainant on the 6th day of March, 1906, as well as the various exhibits referred to in all said affidavits, and the court being fully advised in the premises, it is, on motion of Peckham, Packard, Ap Madoc & Walsh, solicitors for complainant, ordered, adjudged, and decreed that, upon complainant filing the usual injunction bond in the penalty of $1,000, the said defendant, Louis Weber & Co., its servants, agents, attorneys, employés, and representatives, and each and every one of them, be and they hereby are enjoined and restrained, until the further order of this court, from buying, selling, or exchanging, and from offering to buy, sell, or exchange, and from trafficking in any manner in trading stamps which have been or shall be issued by complainant, the Sperry & Hutchinson Company.