MERCHANTS GREEN TRADING STAMP CO., A PENNSYL-
VANIA CORPORATION, PLAINTIFF, v. VORNADO, INC.,
A KANSAS CORPORATION, DOING BUSINESS AS TWO
GUYS FROM HARRISON, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided May 29, 1962.

*Mr. Warren J. Kaps* appeared for plaintiff (*Messrs. Stein & Kripke,* attorneys).

*Mr. Allan Ravin* appeared for defendant (*Messrs. Wilentz, Goldman, Spitzer & Sills,* attorneys).

PASHMAN, J. S. C. (orally). This is the adjourned return date of an order signed by this court on May 16, 1962, directing the defendant, Vornado, Inc., to show cause why an interlocutory injunction should not be granted restraining and enjoining "the defendant, its officers, agents, servants, employees, subsidiary or affiliated corporations, and any person, firm, or corporation acting in concert with any of them, from (1) advertising or otherwise offering to exchange, redeem, purchase, or sell; (2) from exchanging, redeeming, purchasing, or selling; and (3) from in any other way dealing in or with plaintiff's trading stamps designated Merchants Green Trading Stamps."

I think it best, prior to considering and disposing of the varied intricate legal questions involved in this case, that I set forth with some degree of particularity the exact nature of the plaintiff's alleged cause of action.

This case was instituted by Merchants Green Trading Stamp Company (hereinafter referred to as Merchants) by the filing of a verified complaint wherein it was alleged that the defendant, Vornado, Inc., owns and operates a chain of retail and department stores in which it does business under the name of Two Guys From Harrison; that the plaintiff has been, since 1956, and is presently engaged in the business of promoting the sale of merchandise through the use and distribution of trading stamps through various retail establishments; that the plaintiff has expended considerable sums of money through the years to promote and

to assure the success of its stamp trading business; that as part of its business the plaintiff enters into franchise agreements with certain retailers whereby the retailers are given the exclusive right or franchise in expressed territorial boundaries set forth in the agreement to issue plaintiff's stamps to their customers; that the customers of authorized retailers may offer filled savings booklets for redemption at various redemption centers operated by the plaintiff; that plaintiff provides its retail merchants with services, signs, posters, and other advertising material, a supply of stamp books and a supply of redemption catalogs; that these retail merchants undertake to advertise the adoption and use of Merchants Green Trading Stamps, to purchase such stamps from the plaintiff, to offer such stamps to all customers making cash purchases, or prompt payment of credit purchases, to issue to customers one stamp for each ten cents paid on his purchase to be issued without charge to the customers, and to supply the customers with a stamp book and a redemption catalog; that each customer who receives a stamp from an authorized and franchised retail merchant does so subject to the following terms: (1) the title to the stamp remains in the plaintiff; (2) the stamps are not transferable without the written consent of the plaintiff; and (3) the only right which the customer acquires in the stamps is to paste them in the collector's book, and to present them when these books are filled for redemption, or to present them to the plaintiff for redemption in merchandise; that the operation and distribution of the plaintiff's stamps by its 300 retail merchant franchise agents has produced extensive good will and public acceptance for the plaintiff and its retail franchise agents; that the defendant issues its own trading stamps with food purchases made by customers at any of defendant's stores (any of the Two Guys From Harrison stores); that the defendant has offered to exchange partial or filled books of any trading stamps, stamp for stamp, with food purchases of $5 or more, subject to

a limit of one book of stamps per customer; that the said conduct which I have just described began on May 9, 1962, to the date that the complaint was filed; and that the defendant has exchanged, and is exchanging, and intends to continue to exchange the trading stamps of the plaintiff for its own Two Guys trading stamps.

The plaintiff then alleges that based upon the course of conduct pursued by the defendant, the following has occurred: (1) the defendant has falsely represented to the public and to those participating in plaintiff's stamp program that defendant is authorized to participate in the redemption and distribution of Merchants Stamps; (2) plaintiff and its franchise agents have suffered and will continue to suffer immediate, substantial and irreparable injury in certain respects as set forth in paragraph 14 (A) to (F) of the complaint; (3) defendant's actions constitute unfair competition, and the scheme contrived by the defendant has as its purpose the destruction of the plaintiff's business so as to eliminate the plaintiff as a competitor in such business; (4) defendant has maliciously interfered with the agreement between the plaintiff and its franchised retail merchants and is inducing the merchants to breach their contracts with the plaintiff; (5) that the defendant is maliciously inducing the retailers' customers to breach the understanding existing between the plaintiff, the retailer, and the customer; (6) that the defendant, with full knowledge of the plaintiff's organization and promotional activities, has intentionally undertaken to deceive the public into believing that it (that is, the defendant) is entitled to participate in the plaintiff's plan by its activities in offering that it will redeem by exchanging them for stamps of other trading stamp companies; and (7) the defendant, through its activities and without the consent of, or payment to the plaintiff, and without any right whatsoever, is appropriating for its own use and benefit the redemption system and the facilities of the plaintiff.

The plaintiff seeks, in addition to the interlocutory relief asked for at this time, the following: (1) to permanently enjoin the defendant from advertising or otherwise offering to exchange, redeem, purchase, or sell, from exchanging, redeeming, purchasing or selling, and from dealing in any other way in or with the plaintiff's trading stamps; (2) to compel the defendant to account to it, and to pay over to the plaintiff a sum of money equivalent to all profits realized as a result of the acts of unfair competition committed by it; (3) costs and disbursements; (4) an order directing the defendant to turn over to the plaintiff all Merchants Green Trading Stamps and stamp books which it has obtained in the manner described herein; and (5) such other relief and such other further relief which the court may deem proper.

Vornado, the defendant in this matter, has submitted several affidavits in opposition to the granting of any injunctive relief at this stage in the litigation between the parties. Mr. Melvin Sherman, the general manager of the Stamp Division of the defendant, Vornado, Inc., denies in his affidavit that the defendant has ever attempted to redeem any of the plaintiff's stamps and/or books. He states that Two Guys has never issued or sold plaintiff's stamps or stamp books, nor has Two Guys made any use of plaintiff's stamps or books received in exchange for Two Guys stamps.

This same deponent states further that Two Guys has never induced any person or organization connected with the plaintiff to repudiate or to breach any valid agreement between it and the plaintiff; nor has the defendant advertised that it would redeem the plaintiff's stamps, or that the defendant was authorized to participate in the Merchants Trading Stamp program.

In addition to the preceding affidavit to which I have referred, defendant also submitted an affidavit of Frank C. Meade, who made visits to several redemption centers of the plaintiff after he had received 150 Merchants stamps.

The substance of Mr. Meade's affidavit, which is denied by affidavits submitted on behalf of the plaintiff, is that in the six redemption centers visited, that is, Middletown Township, Old Bridge, Paterson, Hackensack, North Arlington and Elizabeth, the following was revealed: (1) none of the stores would give him the cash value of the 150 stamps, although he requested it; (2) each store refused to redeem the stamps for merchandise, the reason being that either a full book, or a book with more stamps than he had, was required before a customer could redeem for merchandise; and (3) that on at least three occasions, in three different stores, he was told there was no company policy against transferability.

The plaintiff also submitted separate, additional affidavits concerning the nature of the plaintiff's activities and the effect thereof on one retailer, that is, Charles Murphy, a franchise agent of the plaintiff, who stated that "the plan and scheme of Vornado, if permitted to continue, will destroy the advertising effect of my use of Merchants Trading Stamps; and will result in my terminating my relationship with the plaintiff," and Arthur Rosenberg, who is a senior vice-president of Food Fair Stores, Inc., which owns all of the plaintiff's outstanding stock, stated that the defendant's scheme was designed to entice retail customers away from Food Fair Stores, Inc., to the advantage of the defendant.

In support of its conclusion that the activities of the defendant constitute unfair competition, the plaintiff relies on the cases of *Sperry & Hutchinson Co. v. Siegel, Cooper & Co.,* 309 *Ill.* 193, 140 *N. E.* 864 (*Sup. Ct.* 1923); and *Sperry & Hutchinson Co. v. Louis Weber & Co.,* 161 *F.* 219 (*C. C. N. D. Ill. E. D.* 1908).

A close examination of these cases reveals the following. In the *Siegel* case the plaintiff, as the holder of approximately 12 million of the defendant's trading stamps, sought to compel the defendant to redeem the said stamps. The Supreme Court of Illinois held that the defendant has a

legitimate right to refuse to redeem the stamps in question, and stated:

"These stamps were not negotiable instruments. * * * The purpose of the provision concerning their redemption was to aid the one who issued them in establishing a closer and continuous relation between himself and his customers by having the customer redeem the coupons. No one else has any right to traffic in these stamps." (140 *N. E.*, at *p.* 868)

In the other case referred to, *Sperry & Hutchinson Co. v. Louis Weber & Co., supra,* the court enjoined the defendant which was exchanging one of its stamps for three of the plaintiff's stamps from "buying, selling, or exchanging, and from offering to buy, sell, or exchange, and from trafficking in any manner in trading stamps which have been or shall be issued by [the plaintiff]," and stated that

"It is the essence of the complainant's business that its subscribers shall get the full benefit of its methods of advertising and assistance. Its stamps are not, in the full sense, property. Their nontransferability is an essential element of their value both to the complainant and its subscribers. * * * The parties are entitled to carry on their affairs in such a way as to serve the business interests of each, so long as they are lawfully conducted. To create an unfair market for partly filled and nontransferable stamp books would have a tendency to keep purchasers from trading with subscribers until they were filled. * * *"
* * * [H]ere is no mere competitive course of action. It was open to defendant to issue its stamps and induce cash sales, just as complainant did, through another or on its own account. There was no need for it to prey upon complainant's trade. Its course in this respect would seem to fall little short of malicious, and may be said to constitute a clear case of unfair competition. * * *" (161 *F.*, at *pp.* 221–222)

While the preceding language from *Siegel* and from *Weber* appears on the surface to be dispositive of the question and of the plaintiff's right to an interlocutory injunction in this case, a closer examination of the factual basis upon which the legal conclusions were predicated, indicates that a further probing is needed.

Thus, we note that the plaintiff in *Siegel* utilized a separate corporate entity which was under its control and direction to redeem the defendant's stamps as part of a scheme to lure away the defendant's customers. Furthermore, it appears in that case that once the stamps were collected the plaintiff attempted to have various individuals, acting at its direction and request, redeem these stamps in small quantities so that the defendant would not suspect that anything unusual was happening. (140 *N. E.,* at *p.* 867)

The conclusion reached by the court in *Weber* appears unassailable by reason of the fact that the defendant sent agents around to purchasers of the complainant's subscribers, and by various representations sought to, and in fact did, induce them to exchange their incomplete stamp books for defendant's trading stamps (161 *F.,* at *p.* 221), and furthermore, it also sold the plaintiff's stamps to brokers, and others who presented them for redemption in large lots.

Based upon the preceding factual observations, it seems apparent that the court in *Siegel* definitely objected to the furtive means employed by the plaintiff to achieve its improper self-motivated pecuniary end, whereas the court in *Weber* objected to the direct face-to-face campaign carried on by the defendant, which was designed and intended to directly pirate the plaintiff's customers, and then reap the profit of stamp collection by having brokers redeem the stamps in large lots.

An examination of other federal cases in the general area of stamp redemption indicates that the very evil with which the courts have been concerned is the illegal appropriation, without compensation or permission, of the promotional and advertising aspects of trading stamps. See, *e. g., Sperry & Hutchinson Co. v. Fenster,* 219 *F.* 755, 757 (*E. D. N. Y.* 1915); *Sperry & Hutchinson Co. v. Mechanics' Clothing Co.,* 135 *F.* 833, 835–6 (*C. C. R. I.* 1904); and *Sperry & Hutchinson Co. v. Mechanics' Clothing Co.,* 128

*F.* 800 (*C. C. R. I.* 1904), affirmed on rehearing, 128 *F.* 1015 (*C. C. R. I.* 1904).

Additionally, in their quest for a final solution of the many difficult legal problems posed, the courts appear to pay as much attention to the means employed as they do to the desired or intended end. See *Sperry & Hutchinson Co. v. Siegel, Cooper & Co.; Sperry & Hutchinson Co. v. Louis Weber & Co.*, and the three federal cases *supra*.

In New Jersey the early case of *Sperry & Hutchinson Co. v. Hertzberg,* 69 *N. J. Eq.* 264 (*Ch.* 1905), while factually distinguishable from the instant matter (that is, the plaintiff in *Hertzberg* did not attempt in writing or otherwise to prevent the transfer of its stamps) contains what I think are some pertinent observations, insofar as the problem before me is concerned, *viz.:*

"The trading stamp scheme is complex and is based upon a large number of legal and equitable principles relating to the law of personal property, the law of contracts, the law of estoppel. * * * One advantage to the complainant * * * results from the general assignability of the obligation which the trading stamp represents. But now a weak spot is developed by the operations of the defendant, and the rules of law and equity, which make this obligation of the [plaintiff] to give merchandise for stamps practically negotiable, are found to threaten very great damage to the [plaintiff's] system. In my opinion, what the [plaintiff] is endeavoring to do in this suit is to have a court of equity modify these rules and give the party who puts trading stamps on the market the right to control the same whenever their use or transfer becomes injurious to his business. This claim * * * is based upon the fallacious notion that the trading stamp scheme is *per se* a subject of care and protection by courts of equity.

Men who devise novel schemes of transacting business in order to make money cannot have the courts create novel rules of law for the protection of such schemes. * * *" (69 *N. J. Eq.*, at *pp.* 277–278)

In the main, the allegations made by Merchants falls within the familiar area of interference with contractual and advantageous relations. It seems, therefore, appropriate to set forth the following guiding general principles established by the former Court of Errors and Appeals in

the well-known case of *Louis Kamm, Inc. v. Flink,* 113 *N. J. L.* 582, 578–9 (*E. & A.* 1934):

" 'Merely to persuade a person to break his contract, may not be wrongful in law or fact. * * * But if the persuasion be used for the *indirect purpose of injuring the plaintiff,* or *of benefiting the defendant at the expense of the plaintiff, it is a malicious act,* which is in law and in fact a wrong act, and * * * a wrongful act, and * * * an actionable act if injury ensues from it.'

"* * * While a trader may lawfully engage in the sharpest competition with those in a like business, by offering extraordinary inducements, or by representing his own goods to be better and cheaper than those of his competitors, yet when he oversteps that line and commits an act with the *malicious intent of inflicting injury upon his rival's business,* his conduct is illegal, and if damage ensues from it the injured party is entitled to redress. And it does not matter whether the wrongdoer effects his object by persuasion or by false representation. The courts look through the instrumentality or means employed to the wrong perpetrated with the malicious intent, and provides the remedy to redress that wrong. * * *

Self-enrichment or fraternal interest, and not personal ill will, may well have been the motive, but it is malice nevertheless. While ill will toward a person is malice in its common acceptation or popular sense, in the technical, legal sense it is the intentional doing of a wrongful act without justification or excuse. * * * And a 'wrongful act,' within the intendment of this definition, is any act which in the ordinary course, will infringe upon the rights of another to his damage, *except it be done in the exercise of an equal or superior right.* * * *

Justification connotes just, lawful excuse; it excludes malice. Malicious interposition is unjustifiable in the legal sense. * * * [T]he modern English doctrine is that an intent is wrongful if malicious. * * * And malice may be inferred from the absence of just cause or excuse. * * * If the challenged action were taken for the indirect purpose of doing injury to appellant, or of benefiting respondents at the former's expense, it is a wrongful act, unless done in the exercise of an equal or superior right, and therefore a malicious act, and actionable. * * *

The justification must be 'as broad as the act, and must cover not only the motive and the purpose, or, in other words, the object sought, but also the means used.' * * * 'The weapons used by the trader who relies upon this right [of competition] for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their free operation. No man can justify an interference with another man's business through fraud or misrepresentation nor by intimidation, obstruction, or molestation.' This right to pursue one's business without such undue interference, and

the correlative duty, are fundamentals of a well-ordered society. They inhere basically in the relations of those bound by the social compact. They have their roots in natural justice. * * *"

See also *Newark Hardware, etc., Co. v. Stove Mfrs. Corp.,* 136 *N. J. L.* 401, 404 (*Sup. Ct.* 1948), affirmed *per curiam* 137 *N. J. L.* 612 (*E. & A.* 1948); and *Schechter v. Friedman,* 141 *N. J. Eq.* 318, 324–325 (*E. & A.* 1948).

In view of the preceding language from the *Kamm* case, and assuming that the plaintiff has a protectable legal interest at this point, the natural question to ask is whether the defendant's acts were done in the "exercise of an equal or superior right." The solution to this problem depends in turn upon the nature of the means employed, and the intended ends of the defendant.

As appears in the exhibits attached to the affidavit of Mr. Pincus, who is the vice-president of Merchants, the defendant caused the following advertisement to be inserted in various northern New Jersey newspapers on May 9, 1962:

"We will exchange your partial or filled books of any trading stamps, stamp for stamp* for Two Guys Trading Stamps with a food purchase of $5 or more.

* Only one book exchanged per customer."

It is this language and the conduct of the defendant in actually exchanging its stamps for the plaintiff's stamps which serves as the sole basis for the plaintiff's complaint.

In our State there is no question that the defendant, absent fraudulent, tortious or unfair conduct, has a right to compete with the plaintiff for the same customer dollar. Therefore, with this concept in mind, I should like to direct my attention for just a moment to a closer scrutinization of the defendant's conduct. As I stated previously, the only activities carried on by the defendant, and the one complained of by this plaintiff, is the stamp-for-stamp exchange program initiated by this defendant on May 9,

1962. It is my opinion that this program in its present form cannot provide the basis for the type and scope of interlocutory injunction which the plaintiff seeks. The defendant's actions, I believe, have been direct and non-deceptive. No representations are made by the defendant that it is authorized or permitted by the plaintiff to engage in this program. Certainly, no allegations to that effect have been urged up to this point.

I cannot agree with the plaintiff that the defendant's advertisements represent and constitute an appropriation of the promotional aspects of the plaintiff's stamp program. If anything, the express wording of this advertisement reflects an attempt to alert the general public to the purported superiority of the defendant's stamp program.

It would be improper, I think, for this court to blindly enjoin non-tortious business ingenuity which has a non-intended indirect adverse effect on a competitor's business. Ours is a system which thrives on competitive inventiveness.

While the ultimate effect of the defendant Vornado's conduct may possibly be the same as was noted in the *Sperry and Hutchinson* cases, which I have mentioned previously, the *means* used by Vornado to achieve that end are vastly different. That difference may be fairly characterized as competitive directness (*i. e.,* the action of Vornado) as opposed to and contrasted with deceptive and fraudulent self-dealing (which is reflected in the *Sperry and Hutchinson* line of cases).

In the case of *Light v. National Dyeing & Printing Co.,* 140 *N. J. Eq.* 506, 510 (*Ch.* 1947), the court pointed out that:

"The power to issue injunctions is the strongest weapon at the command of the court of equity, and its use, therefore, requires the exercise of great caution, deliberation and sound discretion. * * * Before the court of equity may issue its injunction, it must find, first, that the complainant's right to the relief sought is clear and free from doubt. Secondly, it must appear that irreparable damage will follow the refusal of the writ. There must be, as the

cases put it, an urgent and compelling necessity that the injunction issue. And, third, subject to but few exceptions, the defendants must have failed to controvert the facts which are alleged to create an equity in favor of the complainant."

Accord: *N. J. State Bar Ass'n v. Northern N. J. Mortgage Associates,* 22 *N. J.* 184, 194 (1956); *Devine v. Devine,* 20 *N. J. Super.* 522, 528 (*Ch. Div.* 1952); *Trisolino v. Meltsner,* 23 *N. J. Super.* 204, 208 (*App. Div.* 1952). Compare *Mayfair Farms, Inc. v. Socony Mobil Oil Co., Inc.,* 68 *N. J. Super.* 188, 194 (*Ch. Div.* 1961), and *Harker v. McKissock,* 1 *N. J. Super.* 510, 531 (*Ch. Div.* 1948).

Furthermore, a bare allegation standing alone that irreparable injury will result unless an interlocutory injunction is granted, in my opinion, is not sufficient to support the granting of a temporary injunction. See *Light v. National Dyeing & Printing Co., supra.*

Therefore, it is the opinion of this court that the plaintiff is not entitled to a continuance of the preliminary restraint heretofore issued; nor to the entry of an interlocutory injunction embodying the terms of said restraint.

I do feel, however, that the defendant should (and it is so ordered) place a conspicuous statement in its future advertisements of any kind to the effect that Two Guys is not acting as the authorized agent or representative of Merchants Green Trading Stamps in the exchange of its stamps. I think that such a course of action will virtually erase the apparent basis of the plaintiff's claim of illicit palming off and consumer confusion, without the necessity for prohibitory injunctive relief.

Therefore, it is unnecessary, in view of the preceding observations and statements to decide at this time whether the plaintiff, or the plaintiff's stamp program, and the relationship arising therefrom, are entitled to judicial protection. The question of the legality of the plaintiff's contracts with its retail merchants, and its alleged contractual relation with the buying public will be resolved at a future date.

Counsel can present an appropriate form of order, consented to as to form, or on notice, dissolving the preliminary restraint heretofore granted, and denying the request for an interlocutory injunction.