## SPERRY & HUTCHINSON CO. v. MECHANICS' CLOTHING CO.

(Circuit Court, D. Rhode Island. February 16, 1904.)

No. 2,651.

1. INJUNCTION—GROUNDS—INTERFERENCE WITH CONTRACT.

Complainant company issued trading stamps, which it sold to merchants under a contract that they should be given out to customers as a special discount for cash, one stamp for each 10 cents worth of goods purchased. The contract provided that the stamps when so issued would be redeemed by complainant in goods when presented in books containing 990 stamps each, that they should only be given out in the manner prescribed, and that the property in and title to the stamps should remain in complainant. It also issued advertising books to the public, which did not give the terms of the contracts with merchants, or state the requirement that the stamps must be presented in books, but represented that each stamp was redeemable, nor did the stamps show such condition on their face. *Held*, that the title to the stamps while they remained in the hands of the merchant was a limited one, and he acquired no right to dispose of them otherwise than according to the contract, and that complainant was entitled to an injunction to restrain a defendant from unlawfully interfering with its contracts by inducing merchants to sell the stamps in violation thereof, and by selling the stamps so purchased to other merchants having no contracts with complainant, defendant having full knowledge of the terms of such contracts.

2. SAME—FRAUDULENT INTERFERENCE WITH COMPLAINANT'S BUSINESS.

Defendants, having obtained quantities of such stamps, in part by purchase from merchants, and in part from customers of such merchants to whom they had been regularly issued, gave them out to their own customers in such quantities as they chose. They also advertised that they had special arrangements with complainant by which they were authorized to give double the usual number of stamps with purchases from their store, and offered to redeem any of complainant's stamps either in goods or in cash, whereas in fact they had no contract with complainant. *Held*, that such manner of advertising was a fraud upon complainant, and entitled it to an injunction restraining the same, as well as the use of the stamps by defendants, in so far as they were acquired by purchase from merchants in violation of their contracts; and that as there was no way of distinguishing between the stamps so acquired, and those obtained from customers of merchants having contracts with complainant who issued them in accordance with the contract, the injunction would be extended to all.

In Equity. On motion for preliminary injunction.

W. Benson Crisp, John S. Murdock, and Tillinghast & Murdock, for complainant.

Edward D. Bassett, for defendant.

BROWN, District Judge. This is a petition for a preliminary injunction to restrain the defendants Landesman and Heller, copartners doing business under the firm name of the Mechanics' Clothing Company, from issuing, selling, or disposing of certain "green trading stamps." The complainant, a corporation, is engaged in what may be described as the "trading stamp business." It issues to merchants coupons, in the form of adhesive stamps, which are given by the merchant to his customers as a special discount or inducement for payment in cash. The complainant enters into a special contract with the merchant as to the title and use of the trading stamp. The company agrees to advertise the business of the merchant, and to distribute to

the public books descriptive of the trading stamp business; to main-tain a store for the purpose of redeeming stamps issued by the merchant; and to keep on exhibition in said store goods with which to redeem the stamps, "when presented in the above-mentioned books and in lots of 990 stamps collected in the general way." It also appears that the complainant's trading stamps have been extensively advertised by newspapers, placards, and posters. The merchant agrees to receive "a sufficient number of trading stamps, to be supplied, as a discount for cash trade, to all persons who may call for them," and to give out said stamps, one for each 10 cents represented in a purchase, 10 stamps for one dollar, etc. He agrees not to dispose of the stamps in any other way, to pay the complainant a fixed price per hundred for the use of all stamps disposed of, and to display signs which read, "We give trading stamps." It is also agreed "that the property in and title to said stamps remains with the" company. The advertising book, or subscriber's book, issued to the public, does not inform the public of the terms of the agreement between the company and the merchant; for, while in the contract the company agrees to redeem stamps when presented in books in lots of 990 stamps in a book, it is advertised to the public that every single trading stamp is redeemable, that various articles can be procured for a smaller number than 990 stamps, that certain articles "will be exchanged for 990 green trading stamps, or one filled book," and that other articles "will be exchanged for 1980 green trading stamps, or two filled books." The public is not informed that stamps are redeemable only when presented in books.

It is the contention of the complainant that the trading stamp remains its property even after it has gone into the hands of a customer and has been received by him as a discount for a cash purchase. Upon the proofs, I find that the title to the stamps, while they are in the hands of the merchant, is a limited one, and that he acquires no right to dispose of them otherwise than according to the contract. It follows that merchants who should sell the stamps or dispose of them not in the way prescribed, would violate the contract with the company.

The complainant has introduced evidence that the defendants had in their possession stamps which could only have been acquired by the defendants from merchants who had disposed of them in a manner not authorized by the contract. There is also evidence tending to show that the defendants have solicited merchants, under contract with the complainant, to purchase trading stamps, and have sold trading stamps to such merchants. The evidence is sufficient to show that the defendants have full knowledge of the character of the contract between the merchant and the company, and that they have deliberately sought to induce merchants to break these contracts, to the detriment of the complainant. That the complainant is entitled to an injunction to restrain the defendants from such unlawful interference with its contracts seems to be well established. In Exchange Telegraph Co. v. Gregory, L. R. 1 Q. B. 147, it was said:

"It is not, as I understand the law, every procuring of a breach of contract that would give a right of action. The nature of the contract broken must be considered."

128 F.—51

It hardly can be doubted that the complainant's business will be greatly damaged by the breach of its contracts. These contracts are generally uniform in requiring but one stamp to be given for each 10 cents of a purchase, and, if persons are enabled to issue stamps on better terms than those authorized by the contracts, there is an impairment of the value of the trading stamps to each merchant, and a lessening of his willingness to procure them from the complainant. The defendants clearly have been guilty of fraud upon the complainant by advertising in the newspapers in a manner which would tend to induce the public, as well as the merchants who were under contract with the complainant, to believe that the defendants had been authorized by the complainant to give more than the usual number of trading stamps. They have simulated the form of the complainant's advertisements, and have copied certain expressions in a manner tending to aid the deception. Also, they have issued a notice:

"By special arrangement with the company, the Mechanics' will give double the usual number of green trading stamps on all purchases all the year around." "The Mechanics' is the only store in Providence authorized to give double the usual number of green trading stamps in all departments, every day in the week, every week in the year."

These advertisements have been repeated, the first in evidence appearing December 4, 1903, and the last in evidence on January 27, 1904. The defendants have also used the special signs of the complainant in their windows, and have exhibited, in connection with their advertisements, large numbers of trading stamps. They have also issued, in a conspicuous advertisement, a "Notice to collectors of S. & H. green trading stamps. S. & H. green trading stamps are as good as gold. In order to notify the public that green trading stamps are as good as gold, we have this day made special arrangements to redeem all green trading stamps for spot cash." Offers are also made to exchange them for articles supplied by the defendants. The defendants were in no way authorized by the complainant either to issue or to redeem its trading stamps, and had made no contract with the complainant. The natural effect of these advertisements would be to convey to the public and to merchants a false impression that the defendants were acting under the authority of the complainant, both in issuing its stamps in double quantities, and in redeeming them in cash for the purpose of showing that they were as good as gold. It surely is contrary to equity that, after this course of fraudulent advertising to the public, the defendants now should be permitted to reap the fruits of their fraud, or to issue trading stamps in fulfillment of their fraudulent representations.

The only difficulty in the case arises from the fact that a very considerable proportion of the stamps in the possession of the defendants has been procured from customers. The defendants contend that a full, legal title to these stamps passed to the customers, that the title was transferable, and that one who has the legal title may use them for advertising purposes in such way as he sees fit without infringing upon any legal right of the complainant, since the complainant's advertising scheme is not property entitled to legal protection. I cannot accept the complainant's contention that the defendants cannot acquire

from any collector of the stamps any title to the stamps of the complainant, or any right to the use thereof. The company contends that the only right which a collector of the stamps acquires is that which is secured to him by a merchant under contract with the complainant. This, I think, is erroneous. The stamp, on its face, is a mere token, which conveys no information of the uses to which it can be put. The public is informed of those uses by the advertisements of the complainant. The information conveyed to the public by the complainant is that these stamps are redeemable for goods exhibited in its stores, and upon these goods a value is placed. It is not true that these stamps are a mere gratuity to the collector. The required consideration is that he shall obtain these stamps by making cash payments to one of a designated number of merchants. He obtains such rights as are promised to him by the complainant. There is no evidence that he is in any way informed, or put upon inquiry, as to the specific contract between the merchant and the company. After advertising to the public that the stamps were redeemable, that every one was redeemable, the complainant surely would have no right to impose upon a person who had collected 900 stamps an obligation to collect 90 more before he could redeem them. Upon the complainant's own showing it is not true that the stamps are redeemable only when presented in subscribers' books; and if it were the practice of the company to impose upon the public a condition of this character, the complainant would have no standing in a court of equity.

There is no contention, however, that the complainant does not perform the promise which it makes to the public. A collector of the stamps is doubtless a holder for value, and there appears to be no reason why he cannot transfer a stamp, with his rights of redemption, to any person and upon such terms as he may see fit. The value of the stamp resides in the complainant's promise of ultimate redemption. Though the stamp passes through many hands before it is presented for redemption, the complainant's obligation to redeem is not affected. It is, of course, desirable, from a business point of view, that only merchants who procure stamps from the complainant should issue them as advertisements; but, as any merchant may give to customers premiums in the form of goods or car tickets, it is difficult to see how he can be restrained from giving also these stamps, though they were issued by the complainant.

Such part of the bill as relates to the doctrine of trade-marks, so far as it has been made to appear, is entirely irrelevant. The stamps issued are actually the stamps made by the complainant, and they are put forth as such. No express restriction upon the use of the stamp is conveyed to the public. The complainant has not succeeded in directly informing the collector that he cannot use the stamps for advertising purposes. The argument under point 4 of the complainant's brief, therefore, I deem unsound in fact and in law. Even if a collector of the stamps is put upon inquiry, the answer to the inquiry would be found in the advertisements, issued by the complainant, that each stamp is redeemable; and, even if the defendants were put upon inquiry, they were entitled to rely upon such information as was contained in the complainant's public advertisements, though they had

specific knowledge of the contract between the merchant and the company. It would appear that the company has done more than it was required to do, and has bound itself to the public to redeem the stamps, whether presented in books or otherwise. If we should accept the complainant's contention that the public has no other rights than those set forth in the contract between the merchant and the company, the result would be to dismiss the bill.

If there is any ground for holding that a trading stamp once issued cannot again be used by its owner as an advertisement, it is only that suggested in the case of National Telephone News Co. et al. v. Western Union Telegraph Co., 119 Fed. 294, 56 C. C. A. 198, 60 L. R. A. 805, in which, in rendering the opinion of the Circuit Court of Appeals for the Seventh Circuit, Judge Grosscup said:

"In short, the law being clearly inadequate to that purpose, equity should see to it that the one who is served, and the one who serves, each gets what the engagement between them calls for; and that neither, to the injury of the other, shall appropriate more."

It may, perhaps, be argued that the repeated use of a trading stamp for advertising purposes is so inconsistent with the understanding between collector and company, and so destructive to the business of advertising in this way, that it should be restrained. I should hesitate to grant a preliminary injunction on such doubtful and debatable grounds. But it is unnecessary to consider what are the limits of the doctrine of the case last cited, and how far the principles applied in that case are applicable here. This may be reserved to final hearing.

The complainant clearly is entitled to an injunction on the ground of unfair and fraudulent interference with its contracts and with its property. While it may be that the defendants have a clear legal title to many of the stamps which they have collected, and even the right to use them for advertising purposes, it surely is against conscience that they should use them in connection with their fraudulent advertisements, or as a part of their present fraudulent scheme and unwarranted attack upon the business of the complainant. By being deprived temporarily of the use of their stamps for such fraudulent purposes, they are not deprived of any lawful right, nor are they deprived of any lawful rights in losing any trade advantage from a notoriety arising from their fraudulent acts. As, from the nature of the case, the complainant can hardly be required at this time to make proof of exactly what proportion of the stamps was acquired legally and what illegally, as it is hardly practicable to determine just what proportion of the stamps have been acquired by the use of fraudulent statements, and as this confusion is the result of the defendants' own acts, the defendants must suffer the usual consequences to wrongdoers who have confused their own property with that of others, and must bear the burden of such delay as is essential to the orderly ascertainment of the legal and equitable rights of both parties.

A draft decree for a preliminary injunction may be presented accordingly.