PREST-O-LITE CO. v. DAVIS et al.

(District Court, S. D. Ohio, W. D.    October 1, 1913.)

No. 6,697.

TRADE-MARKS AND TRADE-NAMES (§ 72*)—UNLAWFUL COMPETITION—USE OF GAS CONTAINERS FOR COMPETING GAS.

Complainant manufactures and sells acetylene gas for automobile illumination put up in metal containers of peculiar construction and has also provided an exchange system by which an automobile owner, having once purchased a tank, can exchange it when empty for a filled tank at a nominal charge in almost any town in the United States of over 2,000 inhabitants. Defendants sold "Searchlight" gas for similar use, put up in different containers; but, in order to enable purchasers of its gas to take advantage of complainant's exchange system, purchased a quantity of complainant's empty Prest-O-Lite tanks, which defendants procured to be filled with Searchlight gas and which they sold to consumers. *Held* that, while defendants had a perfect right to purchase empty Prest-O-Lite containers from the owners, complainant's exchange system was a property right which was impaired by defendants filling such tanks with Searchlight gas and selling them, which constituted unlawful competition, though defendants pasted a paper label thereon from which the purchaser might, by close attention, discover that the gas contained therein was not Prest-O-Lite.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 83; Dec. Dig. § 72.*]

In Equity. Suit for unlawful competition in trade by the Prest-O-Lite Company against Arthur C. Davis and another, doing business as Coughlin & Davis. Decree for complainant.

Dudley V. Sutphin and P. Lincoln Mitchell, both of Cincinnati, Ohio, and Clarence Winter and Keyes Winter, both of New York City, for complainant.

Robert H. Parkinson and Wallace R. Lane, both of Chicago, Ill., James G. Stewart, of Cincinnati, Ohio, and John S. Miller and Merritt Starr, both of Chicago, Ill., for defendants.

HOLLISTER, District Judge. The complainant makes acetylene gas for illuminating purposes for use on automobiles, and sells gas in tanks of peculiar construction. The gas is known by the name

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Prest-O-Lite," and complainant has caused that name to be registered under the laws of the United States as its trade-mark. Under that name the complainant has established a large and valuable business in its tanks filled with its gas, and, at great expense in money and effort, has built up a business system and good will of great value.

At the time of suit, the complainant, through contracts made for the purpose with dealers in automobile supplies, had depots (perhaps not agencies in the legal sense) in every town in the United States of over 2,000 inhabitants, at which the owner or user of one of its tanks originally filled with its gas could, at a nominal fixed price, exchange the same, when exhausted, for another of its tanks charged with its gas and ready for use. The purchaser of such a tank from the complainant, or from a dealer, or from the automobile maker as a part of the machine's equipment (many makers, among whom appear the names of a number of the manufacturers of the most important and best known automobiles, furnished Prest-O-Lite tanks charged with Prest-O-Lite gas as a part of the machine's equipment) had the assurance wherever he might be of an immediate exchange of his exhausted tank for a tank charged and ready for use.

The utility of a service of such general availability to the user is obvious. If illustration is needed, it may be found in the testimony of the witness Carpenter, who thought Searchlight gas the better, but insisted upon always receiving a Prest-O-Lite tank because of its value for purposes of exchange. (He thought the Searchlight gas was better than Prest-O-Lite gas because he had been told by the defendants that it was better.) The cost of the exchange was small, while the price of the original tank filled with gas was large. It is in evidence and undoubtedly true that the purchaser was willing to pay the initial price in order to participate in a system of such great usefulness to him. He knew it was to the interest of the maker and the dealer to keep him supplied with a full tank for the empty tank, and had the assurance when he bought that the exchange could be made at a small cost at almost any time or place.

It is not surprising that the complainant's sales gradually grew to enormous proportions after the establishment of this system, and that, from its practical use, there accrued to the complainant a valuable good will toward and in the gas made by it. Of course, its gas was identified by the tanks in which it was confined. The tanks were identified not only by their appearance, including particularly the valve apparatus at one end, but also by the trade-mark and trade-name etched upon them, as well as by other letters and numerals not requiring particular reference.

The makers of the acetylene gas known as "Searchlight" gas were in competition with the complainant, the Searchlight gas being used for the same purpose as Prest-O-Lite gas; but defendants' containing tanks differed in appearance from Prest-O-Lite tanks, particularly because the location of the valve controlling the emission of the gas was not exposed to view, it being hidden in the concave bottom of the tank, and because the tank was marked to indicate its contents, Searchlight gas.

We are not now concerned with the difference in quality between Prest-O-Lite gas and Searchlight gas, if there is any difference. But it is in evidence, and is probably true, that the owner of a Prest-O-Lite tank would, when the tank was exhausted of its Prest-O-Lite gas, want and ask for Prest-O-Lite gas when he offered his empty tank in exchange for a full tank. No doubt, in many instances, such owner asks only _or a full tank, but expects to get the Prest-O-Lite gas he has been using. Of course, if he were tendered a Searchlight tank he would know he was not getting what he expected if he would see what he was getting, or if, in the event it was light enough to see, he took notice of any other fact than that an exchange of tanks was being made. It is highly probable that in many, if not most, instances, the pertinent communication between the user and the dealer is confined to the former's expressed desire for a full tank and the dealer's affirmative answer, either in words, or in acquiescence, silent, so far as words are concerned. It is easy to see how an exchange for one of these tanks for the other might be made without the user's present knowledge.

Howsoever far deception in this way might be practiced by an unscrupulous dealer upon the owner of a Prest-O-Lite tank which, exhausted of gas, he offered in exchange for a Prest-O-Lite tank charged with gas of that name he wanted and expected, is not directly involved in this controversy, but reflects upon the more subtle form of deception with which the defendants are charged. When to such user, whether requesting a full tank or a tank of Prest-O-Lite gas, is given by the dealer in exchange a Prest-O-Lite tank filled with Searchlight gas, the opportunities for deception are even much greater than under the circumstances referred to above. It is with deception of this very kind, as affecting its trade-mark and its trade-name and its goodwill and business system, that complainant charges the defendants in this case.

It is obvious that the purchaser of one of the empty tanks made by complainant becomes its owner with all the rights of absolute ownership, and equally obvious without paradox that, while he may use it for his own purposes or sell it or give it away, he cannot sell it charged with other gas to persons believing it to contain complainant's gas. The substance of the main charge against the defendants is that they sold and sell Prest-O-Lite tanks charged with Searchlight gas. They do not deny this, but say that complainant's contracts with the dealers come under the ban of the Sherman Anti-Trust Act, and that, in any event, having become the owners of empty Prest-O-Lite tanks, they could with propriety exchange them charged with Searchlight gas, for the user knew at the time he was getting Searchlight gas and not Prest-O-Lite.

The Sherman Law is not applicable to this case. Even if it were assumed that the contracts referred to were in any respect obnoxious to that act and that such decisions as Dr. Miles Medical Co. Case (Dr. Miles Med. Co. v. Park & Sons Co., 220 U. S. 373, 31 Sup. Ct. 376, 55 L. Ed. 502) would require a holding to that effect, it may be said that the contracts are not themselves involved in this case. They serve no other purpose here than as a description of the method through

which the complainant's system of doing business was established. The case comes, therefore, within the ruling of the Circuit Court of Appeals for this circuit in Coca Cola Co. v. Gay-Ola Co., 200 Fed. 720, 726, 119 C. C. A. 164.

Giving due weight to the testimony of defendants' witness Gluchowsky of want of intention at any time to deceive; it is abundantly proved that acts of deception were practiced by defendants which are evidence not only of a particular instance, but tend to show a course of conduct in defendants' dealings. The facts disclosed by the witnesses Camm, Ross, and Coughlin, relative to complainant's tanks Nos. 241920 and 45716, are of too circumstantial a character in connection with other evidence in the case, actually disclosed, or with some certainty to be inferred, to be dealt with as were the facts in the Gorham Silverware Case (Gorham Mfg. Co. v. Emery, etc., Co., 104 Fed. 243, 43 C. C. A. 511). These tanks were obtained by Camm as Prest-O-Lite tanks filled with Prest-O-Lite gas. They were in fact charged with Searchlight gas, and there was nothing about them or the statement of the defendants' clerk to even suggest the contrary. They were dealt with by defendants' clerk as and for genuine Prest-O-Lite tanks; that is to say, Prest-O-Lite tanks charged with Prest-O-Lite gas. Complainant's trade-mark and trade-name was on them. These tanks were part of a shipment to defendants by the Searchlight Gas Company of Prest-O-Lite tanks charged by the Searchlight Company with Searchlight gas. The tanks so charged were hidden by defendants, lest the Prest-O-Lite representative in Cincinnati should see them. These tanks were presumably charged with Prest-O-Lite gas, and there was nothing about them to indicate the contrary.

After suit was brought, but continuing to sell Prest-O-Lite tanks charged with Searchlight gas, the defendants, apparently because they saw or suspected the manifest impropriety of using old Prest-O-Lite tanks ("bottles"), took off of the Prest-O-Lite tanks the name plate of complainant, formerly used to designate the tanks and their contents, and adopted the label Exhibit L, to which further reference will be made.

It is established by the evidence beyond a doubt that, after the contract relations between the complainant and defendants had come to an end and dealings between them had stopped, the defendants had advertised largely and professed to deal in both Prest-O-Lite and Searchlight systems, though they sold as genuine Prest-O-Lite tanks charged with Searchlight gas. That some of defendants' customers ordering Prest-O-Lite believed that they were getting the genuine Prest-O-Lite gas in the Prest-O-Lite tanks sent them by the defendants is not open to doubt.

Defendants, when dealing in genuine Prest-O-Lite tanks charged with Prest-O-Lite gas, had a large trade in Cincinnati; there then being some 1,800 users of Prest-O-Lite tanks in that city. Defendants stopped dealing with complainant and tried to introduce Searchlight tanks charged with Searchlight gas. Their trade wanted Prest-O-Lite tanks and gas. Their customers would not, knowingly, take Searchlight tanks because Prest-O-Lite dealers throughout the country would

not take them in exchange. Sometimes a customer, such as the witness Carpenter, wanted Searchlight gas, but he would have no other than a Prest-O-Lite tank, because he could get that filed in places where Searchlight gas could not be procured. He prefers the Prest-O-Lite tank because of its "exchangeability" wherever he might be using his automobile. The defendants are using the name and reputation of complainant's product and complainant's business system to further their own competing goods. Every time they sell a charge of Searchlight gas in a Prest-O-Lite tank, they either deceive the user desiring Prest-O-Lite gas (what he had before) or the purchaser knowingly takes Prest-O-Lite tanks charged with Searchlight gas. In one case they palm off their own goods as complainant's and trade on complainant's good will; in the other, they sell their own goods (gas) only because the purchaser knows he can, by having a Prest-O-Lite tank, participate in the system of business established by the complainant. In either case the complainant loses and the defendants gain by defendants' use of something which belongs to the complainant.

The defendants' right to purchase old Prest-O-Lite tanks cannot be doubted, but they have not shown that it is cheaper to buy them than the genuine Searchlight tanks. Why do they continue to use old Prest-O-Lite tanks, either purchased or received in exchange? If Searchlight gas is as good as or better than Prest-O-Lite gas, why not sell Searchlight gas and Searchlight tanks?

But defendants, having the right to own and use as they please Prest-O-Lite tanks so long as they do complainant no injury of which the law takes cognizance, say no injury to the complainant can result from recharging Prest-O-Lite tanks with Searchlight gas, because (after this suit had been instituted) they put paper labels on the tanks marked with complainant's trade-mark and trade-name of such character that no one can be deceived as to the contents of the tank. Complainant's Exhibit L; Defendants' Exhibit 2A.

I am not prepared to say (there would be an impropriety in saying in advance of the question) whether or not such a label, indelibly marked upon a Prest-O-Lite tank, complainant's own marks having been obliterated, would meet any legal objection which complainant might attempt to raise against it. But in my judgment, for several reasons, this label does not afford adequate protection to the complainant's rights under its trade-mark and trade-name and to the business and good-will built up and belonging to it under and through the name "Prest-O-Lite."

1. It is probably true that many owners of automobiles, while knowing their own tank as a "Prest-O-Lite" tank, which, to them, means it contains acetylene gas called "Prest-O-Lite," would not recognize in the legend printed in large type on the label, "The Searchlight System" and the smaller, though large, type "Of Acetylene Storage," any difference between their own "Prest-O-Lite" (which is without doubt a searchlight) and a similar light distinctly named "Searchlight." The statement in bold but smaller letters, "This Re-filled Tank Contains Acetylene Gas made by the Searchlight Gas Company," would not, unless the owner knew that Prest-O-Lite gas was made by the Prest-

O-Lite Company, be more enlightening than the statement of the system.

The label is so devised that the negation of the contents being Prest-O-Lite gas is so placed and in such comparatively small type that one cannot but discover purpose in choice of description and selection and arrangement of type.

2. The lighting apparatus is but one of many important features of an automobile. Doubtless the manipulator of the machine is more concerned with the machinery and especially with the intricate handles, levers, and buttons which control its action. When the exchange of tanks is being made it is seldom done by him. The tank does not come into his hands, and he is usually, particularly if after a trip of some length, looking to the more important parts of the machine. In any event, if he remains in the machine while the exchange is being made, the tank from its location is some little distance away from him, and when placed in its receptacle is, for the most part, concealed from view. He would scarcely notice the label while the tank was being carried to the machine. It is not like a label on a box or a package or a bottle. These are usually handled by the purchaser within easy vision and with more or less concentration. Even so, he is frequently misled by an ingeniously contrived label.

It would seem (although a decision on the question here is not necessary and is not made) that the case affords an opportunity for the application of the principle upon which some of the decisions rest; that when an article has become known to the trade by its shape, size, color, and general appearance, and is identified by these or some of them, it cannot be used for purposes of competition. The product sold by complainant through the dealers at the time of exchange of tanks is gas. It cannot be identified by any other means than by the receptacle which contains it. When an exchange is made, the appearance of the tank indicates the origin of the gas. Even if defendants' label covers the trade-mark, it does not negative the clear impression the tank makes of being the counterpart of the package surrendered on exchange, and that it is filled with the same gas as the package surrendered. That the package received on exchange contains a different gas from that which it purports to contain would only appear upon an examination of the printed label, to which, from the appearance of the package, there would be no occasion to give particular or even any scrutiny. But since it is the practice of complainant also to put labels on its tanks, there would be by so much the less occasion for inquiry by the user.

3. The purchaser from the complainant gets more than the tank itself. He buys a right and opportunity to participate in the business system complainant has, at great expense, established and maintained. The especial value the tank has is its exchangeability, when empty, for a full tank essentially the same as the other. The popularity of Prest-O-Lite is without doubt due to this fact. By furnishing dealers in all parts of the country with charged tanks for exchange for its empty tanks, and advertising in many ways, an enormous demand has been created by complainant for its tanks and gas. This system of exchange

is necessarily highly profitable to the complainant and, in a smaller measure, to the dealer, and performs a service to the user of the greatest importance. This service and the general knowledge that it may be had is the very life of complainant's business. To the tank, the title of which has passed from the complainant, is attached a quality—the quality of exchangeability practically anywhere in the United States. This quality the complainant has created and it belongs to the complainant and is a valuable asset in its business.

The makers of Searchlight tanks and gas use, in competition with the complainant, a similar system; but, for the purposes of this case, a finding is justified by the evidence that the service afforded by the Searchlight system is not as extended as complainant's and its gas is not, through its own system, to be had in as many places as complainant's. Hence it is, and the witness Carpenter's testimony but confirms the natural deduction, that, while a user might be content with Searchlight gas, he would only be satisfied with a container known and recognized as a Prest-O-Lite tank exchangeable for another Prest-O-Lite almost anywhere.

And so the defendants, in order to sell Searchlight gas, the profit of which goes to them and the Searchlight Company which charges defendants' tanks with its gas, exchange with the user Prest-O-Lite tanks charged with Searchlight gas for empty Prest-O-Lite tanks and thereby reap a very considerable part of the value of the quality of exchangeability inherent in every tank the complainant sells. There is surely something unfair in this, if not morally wrong.

Fair competition between the two systems is excellent, but the acts complained of do not involve competition between the two systems. They involve a use by the defendants in the furtherance of their competitive business, and the appropriation, of something of value which actually belongs to their competitor. Instead of using their own system in competition with complainant's system, they actually make complainant's system the very medium through which their gas was introduced to complainant's customers.

Clearly, it was not contemplated by the complainant and a purchaser in its business system that that system should itself be used to further the business of complainant's competitor; and it is equally clear that, if such use is permitted, the result would be a total destruction of the complainant's business system, for anybody anywhere could, by the use of Prest-O-Lite tanks, introduce Searchlight gas or any other similar illuminant, and eventually break down the complainant's business. This, not through the introduction of or the intent to introduce, a competing business system, but by using complainant's system for its own destruction. The result of this would be not only disastrous to the business system built up by complainant, but necessarily destructive of any other similar system.

The facts in this case differ widely from the facts appearing in such cases as the Chicago Board of Trade Case (Board of Trade v. Christie, etc., Co., 198 U. S. 236, 25 Sup. Ct. 637, 49 L. Ed. 1031), or the Stock Ticker Case (National News Co. v. Western Union Tel. Co., 119 Fed. 294, 56 C. C. A. 198, 60 L. R. A. 805), or the Trading Stamp Cases

(Sperry v. Mechanics,' etc., Co. [C. C.] 128 Fed. 800; Id. [C. C.] 135 Fed. 833; Sperry v. Temple [C. C.] 137 Fed. 992; Sperry v. Weber [C. C.] 161 Fed. 219), or the Phonograph Disc Case (Fonotipia Limited et al. v. Bradley [C. C.] 171 Fed. 951); but, nevertheless, there is in them a principle which seems applicable to this.

The great value of complainant's business lies in the interchangeability of its tanks. This quality the complainant has created. It is his, and no one has the right to appropriate it for his own gain to the detriment and even destruction of complainant's business. That quality is incorporeal and intangible, but is property nevertheless. The complainant manifestly having no adequate remedy at law is entitled to have his property protected by a court of equity. This, of course, is aside from any question involved in the ownership of a registered trade-mark; or any question of deceit. Defendants' wrong does not lie in the mere use of old Prest-O-Lite tanks, but in using them to destroy the complainant's business system for the purpose of, or with the result of, injuring the complainant's business.

4. Tanks containing illuminating gas are, under the circumstances of their use, constantly exposed to the weather, and are frequently cleaned by the use of water. It is obvious, and there is evidence tending to show, that paper labels on a metal tank are easily detachable when wet, and, of course lack permanency. In addition to what has already been said on the subject of the label on which defendants rely, it seems to me that the complainant's trade-mark, in which, as such, it has a property right, is not sufficiently obliterated by pasting over it a paper label.

The complainant is entitled to an injunction.

This conclusion is in agreement with the decision of Judge Anderson in the case of Prest-O-Lite Co. v. Searchlight Gas Co. (no written opinion) in the District Court of the United States for the District of Indiana, as the same appears in the decree and order entered by him in that case; and is in accordance with the views of Judge Welborn in the Southern Division of the Southern District of California in the case of Prest-O-Lite Co. v. H. W. Bogen, 209 Fed. 915, as they appear in the opinion filed by him in that case.

Complainant may take a decree in accordance with the views expressed in this opinion.