**ELECTRONIC CORPORATION OF AMERICA, Plaintiff,**

v.

**HONEYWELL, INC., Defendant.**

**Civ. A. No. 69–750.**

United States District Court
D. Massachusetts.

Sept. 23, 1969.

Daniel F. Featherston, Jr., Boston, Mass., for plaintiff.

Norman A. Hubley, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

GARRITY, District Judge.

Plaintiff Electronic Corporation of America ("ECA"), a manufacturer and distributor of electronic controls for furnaces, has sued the defendant Honeywell, Inc., a competitor, for unfair competition, seeking a permanent injunction, an accounting and damages. The matter is now before the court on plaintiff's motion for a preliminary injunction enjoining the defendant from preparing or distributing certain advertising brochures and other written material relating to defendant's replacement program of combustion controls. The plaintiff also requests that the court order the defendant to prepare and disseminate a written notice to correct allegedly "false and misleading" statements contained in written materials previously distributed by the defendant. On the basis of affidavits and exhibits submitted and a hearing, the court makes the following findings of facts and conclusions of law:

### Findings of Fact

1. The plaintiff, a Massachusetts corporation with its principal place of business in Massachusetts, is presently and has been for a number of years the major manufacturer and seller of electronic programming controls for large capacity oil, gas and coal burners in utility, industrial and commercial heat and power plants. The defendant, a Delaware corporation with its principal place of business in a state other than Massachusetts, is a manufacturer and seller of electronic programming controls which compete with the plaintiff's product in the large capacity burner market. The function of the programming controls is to monitor, supervise and manage oil, gas or coal burners in utility, industrial and commercial heat and power plants.

2. The plaintiff is the owner of the duly registered trademark "Fireye"; and its control system, consisting primarily of electronic control, control housing or "box", sensor and sensor housing, is sold as a unit under the Fireye trademark. This system has the Underwriter's Laboratory (UL) and Factory Mutual (FM) designations of approval, and the seals of these organizations appear on a label on the inside of the ECA control housing or box.

3. The plaintiff markets its control equipment in two ways. To new customers, it sells and installs completed Fireye systems. Where the control component, which is the most expensive item in the system, is no longer functioning properly or has become obsolete by production of a new model, the plaintiff sells replacement controls. The control component in the ECA system was, from the early 1950's, 26RJ8, Model 1008. In the early 1960's ECA introduced 26RJ8, Model 6008, which was manufactured and sold both for new installations and as a replacement control for existing locations. In February 1969, ECA declared its 1008 model "obsolete."

4. In 1968 the defendant company developed an electronic control, Model R4150G, which, with its associated parts, competed with ECA in the "original installation" aspect of the market. However, with respect to replacement of

existing controls, the defendant was unable to compete successfully with ECA. The previous dominance of ECA over the industry coupled with the retention by customers of original metal housings and other associated items purchased from ECA with its control gave the ECA 6008, which was designed to be interchangeable with the ECA 1008, a definite advantage over Honeywell's Model R4150G, which was incompatible with the Fireye system. In response to this competitive disadvantage Honeywell developed Model R4150H. This latest control device modifies the R4150G in such a way as to make it compatible with the original equipment provided with the ECA system.

5. In May 1969 Honeywell released to its salesmen and wholesale distributors an advertising brochure announcing the introduction of its Model R4150H replacement control. At the same time, it prepared and sent out to its salesmen a set of instructions containing detailed explanations, wiring diagrams and other information relating to the proper installation, testing and maintenance of the new replacement unit. In June a "Fact Sheet" was distributed concerning the Model R4150H replacement control.

6. On the outside, the brochure states "Now you can replace obsolete Fireye * * * programmers * * *." On the inside is a picture of a Fireye box or housing for an ECA 6008 control, which is not obsolete. However, the photograph of the label is so blurred that one cannot make out whether the label is that of an ECA 1008 model, which ECA has declared obsolete, or the newer ECA 6008. Even if the label clearly showed an ECA 6008, the connection of the language on the outside of the brochure to the photograph on the inside would be too remote to be misleading to the public.

7. The May 1969 brochure depicts on the inside an opened "Fireye" box or control housing with a Honeywell R4150H replacement. The inside cover of the box contains two labels, a "Honeywell Universal R4150H Replacement Pro-grammer" on top and a "Fireye Programming Control" on the bottom. The latter label contains both UL and FM seals of approval. These seals certify the safety and quality of the integrated Fireye system, not the hybrid system produced by the Honeywell replacement. The effect created, i. e., that the hybrid system has received UL and FM approval is false and misleading. However, the "Fireye" label, with the UL and FM seals of approval, was removed in the second printing of the brochure.

8. The brochure states in part that "Plug-in connections make replacement of old Fireye or Honeywell programmers an easy job, accomplished in less than an hour." Although the 12-page instruction sheets appear rather technical and complex to one untrained in the art of electronics, the plaintiffs have not sufficiently proved that this claim is false with respect to skilled workers. However, the statement "No electrician required for replacement of old programmers" appears to be both misleading and irresponsible. Replacement of electronic programming controls are and should be done by qualified burner control technicians.

9. The brochure states that the R4150H is "relatively inexpensive." Although the R4150H replacement is more expensive than the ECA 6008, the chief target of the advertising campaign, it is less expensive than the replacement of one "system" by another. The modest language, "*relatively* inexpensive", is not misleading when interpreted in this way.

10. The brochure describes the R4150H model as "new." In view of the facts that the R4150G made several significant improvements over the previous model R4150A and that the R4150H is a further adaptation of the R4150G, this description is not unwarranted.

*Conclusions of Law*

■ A party seeking a preliminary injunction must show both that he is likely to prevail on the merits and that he will suffer irreparable harm should injunctive relief be denied. Societe

Comptoir De L'Industrie Cotonniere Establissements Boussac v. Alexander's Department Stores, Inc., 2 Cir., 1962, 299 F.2d 33, 1 A.L.R.3d 752. Plaintiff has done neither.

■ As to the merits, plaintiff contends that the defendants in effect should not be permitted to produce and sell a product such as its Model R4150H replacement control. The essence of this complaint is that the defendants are appropriating to their own use the outer box and other associated parts of the Fireye system, and that such conduct represents unfair competition.

Although the element of "palming off" one's goods as another's is generally essential to make out a claim of unfair competition, West Point Manufacturing Company v. Detroit Stamping Company, 6 Cir., 1955, 222 F.2d 581, 586, several cases have recognized as an independent ground for an unfair competition claim the appropriation of a product or an idea by a competitor. International News Service v. Associated Press, 1918, 248 U.S. 215, 241, 242, 39 S.Ct. 68, 63 L.Ed. 211; Prest-O-Lite Co. v. Davis, S.D.Ohio, 1913, 209 F. 917, aff'd 6 Cir., 1914, 215 F. 349; Meyer v. Hurwitz, E.D.Pa., 1925, 5 F.2d 370, aff'd 3 Cir., 1926, 10 F.2d 1019. These cases, however, are all distinguishable from the case at bar. In International News Service v. Associated Press there was a wholesale appropriation by the defendants of the rather unique property in question, i. e., news. The court found that the unfair competition doctrine encompassed such conduct.

In the *Prest-O-Lite Co.* case, the plaintiff manufactured and sold acetylene gas in metal containers exchangeable when empty for a filled tank at a nominal charge. The defendants, competitors, purchased a quantity of Prest-O-Lite tanks to enable purchasers of its gas to take advantage of complainant's exchange system. The court held that the plaintiff's exchange system was a property right impaired by defendant's filling such tanks with its gas and selling them and constituted unfair competition. This case is distinguishable from the present case on two grounds. First, defendant in using the plaintiff's tanks would probably mislead purchasers into believing that the product inside was Prest-O-Lite gas. In this case Honeywell has not represented to potential purchasers that it was marketing an ECA product. Secondly, the tanks constituted the main component of the plaintiff's business operation. The tank cost many times the price of a tankful of gas; and the exchangeability of the tanks was responsible for the plaintiff's success. In this case, Honeywell is utilizing the Fireye outer box and sensor shell. Both components are quite inexpensive and relatively unimportant parts of the Fireye system, the heart of which is the electronic safety control. The *Meyer* case, where defendant used plaintiff's vending machine to sell its picture postcards, is distinguishable on the same two grounds.

■ With respect to the advertising brochure, it seems likely that plaintiff's claim of unfair competition based on its promulgation must also fail. It contains neither the product defamation present in Bourjois v. Park Drug Co., 8 Cir., 1936, 82 F.2d 468, nor the degree of deception in the Ely-Norris Safe Co. v. Mosler Safe Co., 2 Cir., 1925, 7 F.2d 603, which might justify injunctive relief.

Plaintiff's motion for a preliminary injunction is denied.