SPERRY & HUTCHINSON CO. v. POMMER et al.

(District Court, N. D. New York. October 27, 1913.)

INJUNCTION (§ 128*)—GROUNDS—INDUCING BREACH OF CONTRACTS.

Complainant was in the trading stamp business with a general agency in Albany, where it had customers, when defendants, who had a store in Albany, entered the same business in that city. Their agent solicited business from merchants generally, including those using complainant's stamps. The contracts of most, but not all, of these contained a provision that they should not use any other kind of stamps during the term of the contract, but some of them did not know of such provision. Defendants advertised their list of customers and included therein through error some merchants who were using complainant's stamps but not theirs, but such errors were corrected when called to their attention. It did not appear that their agent made any misrepresentations. *Held*, that while they were not justified in advertising complainant's customers as their own contrary to the fact, or in soliciting complainant's customers known

---
*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to be under exclusive contracts with it to break such contracts, there was no such evidence of an intentional unlawful interference with complainant's business as to warrant the granting of an injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 278; Dec. Dig. § 128.*]

In Equity. Suit by the Sperry & Hutchinson Company against Henry Pommer and others. On final hearing. Decree for defendants on filing stipulation.

Suit to restrain defendants from interfering with complainant's business—by acts alleged to amount to unfair competition in trade—and inducing complainant's customers to break their contracts.

Richard O. Bassett, of Albany, N. Y., and Frank T. Wolcott and John H. Jones, both of New York City, for complainant.

Louis M. King, of Schenectady, N. Y., Alfred D. Lind, of New York City, and Leopold Minkin, of Albany, N. Y., for defendants.

RAY, District Judge. For some two years or more prior to April, 1912, the Sperry & Hutchinson Company, with Patrick F. Jordan as its general manager in Albany, N. Y., had been in business in the city of Albany, in the trading stamp business, and its stamps are known as "S. & H." stamps, or "Green" stamps, referring to their color. These are put up in pads and sold to merchants who give them out to customers, if asked for, who pay cash for their goods. The Sperry & Hutchinson Company has a premium store where it keeps a line of goods of various kinds which are given out without charge in exchange for a book of stamps when a customer of the stores where these stamps are kept has gathered a book of stamps. This encourages purchasers to pay cash and enables them to obtain a premium free or, we may say, as a reward for having paid cash for purchases. Having the stamps to give out brings cash trade to the merchant and in this way is beneficial to him. Sperry & Hutchinson purchase these "premium goods" at wholesale and reap their reward through the profit made on the stamps sold. That is, if they sell a 1,000 pad for $5 and give the collector (purchaser of goods) a premium which costs them $2 in redemption of a book of 1,000 stamps and the cost of soliciting trade for the merchants who keep their stamps, advertising, rent, etc., for such stamps is $2, then there is a profit of $1 in that transaction. The housewife pays cash and gets a premium, the merchant gets increased cash trade for his money paid for the stamps, and Sperry & Hutchinson Company gets a profit on the goods it gives out as premiums. The business is legitimate and lawful if honestly conducted, although some of the merchants say it is annoying to them, but that they are compelled to keep stamps or lose business.

While the complainant company was running its business in Albany, the defendants Pommer started the same business there, putting out what is known as the "Palace" stamps. They have a furniture store where they do a general business and also keep their premium goods. Both advertise, but the Pommers advertise the more extensively. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

moment the Pommers started in this trading stamp business they became competitors of the Sperry & Hutchinson Company.

The complainant company usually required those to whom it sold and delivered or agreed to sell and deliver these "Green" or "S. & H." stamps to sign a contract in which is found this clause:

"Said subscriber agrees not to use any trading stamps issued by said company, except those furnished to him direct by it, and not to offer, give or use any other coupons, trading stamps or similar device during the term of this contract, and not to form, encourage or join in any combination of merchants for the purpose of discontinuing the use of said company's trading stamps. The subscriber also agrees that all newspaper and other advertisements published by or for him, shall state, 'We give "S. & H." Green Trading Stamps.'"

Quite a number of the merchants in Albany who had signed these contracts testified that they did not read these agreements, and that the contract was not read to them, and they did not understand or know they had signed a contract containing such a clause. I find that this was true as to several of these merchants who subsequently took Palace stamps of defendants. After the contracts were signed and the delivery of stamps commenced, it was the custom of the complainant's manager to take receipts for the stamps so delivered, and after 1910 the receipts so taken contained this clause:

"Conditions under which S. & H. Green trading stamps are furnished to merchants. * * * The undersigned agrees to use no trading stamps or similar devices except those furnished direct to him by the company, so long as he uses the trading stamps of or exhibits the advertising signs of the company."

The receipt signed was always below these conditions and the receipt was always taken away by the agent of the company. I find that but few, if any, of these merchants knew they had signed a receipt containing such a statement or condition. These merchants were usually busy when the pads of stamps were delivered from time to time, and they signed these receipts as a mere receipt for a pad or pads of stamps and not as a contract. This the Sperry & Hutchinson Company's agent well knew, and the contents of the receipt, these conditions, were not explained to them.

In all, or nearly all, stores where the merchants gave out these "S. & H. Green trading stamps," there was a sign furnished by the Sperry & Hutchinson Company stating, in substance, "We give out Green trading stamps." It follows that when defendants' agent went into one of these stores he knew or ought to have known that he was interviewing a merchant who was giving out the Green stamps. However, this did not inform him that the merchant was under an exclusive contract not to give out other trading stamps.

In April, 1912, the complainant by its duly authorized attorney sent the defendant Henry Pommer the following letter, which was duly received:

"New York, April 5, 1912.

"Mr. Henry Pommer, % Pommer Furniture & Carpet Palace, Albany, N. Y.—Dear Sir: The Sperry & Hutchinson Company has directed me to write you, notifying you that the merchants in Albany who are giving out 'S. & H.'

Green trading stamps to their customers, are under contract for specific periods of time to use 'S. & H.' Green trading stamps exclusively, and not to use the trading stamps, coupons or similar devices of any other concern. I am informed that your agents are endeavoring to induce merchants under contract with the Sperry & Hutchinson Company to violate this clause of their agreement by installing your stamps. The courts of this state and of the United States have repeatedly declared that it is an injury for which an action for damages will lie to induce one party to a contract to violate it. I have no doubt you do not wish to have an action brought against you and this warning will be sufficient to prevent you from further violation of my client's contracts. If you disregard this letter, I am instructed to commence an action against you for damages with an injunction, without further notice. I should be glad to hear what explanation, if any, you have to offer in the matter.

"Very truly yours,                    John Hall Jones."

To this the defendant Pommer by his agent and attorney answered April 22, 1912, as follows:

"April 22, 1912.

"John Hall Jones, Esq., 2 West 45th St., New York, N. Y.—Dear Sir: My attention has been called to your letter of April 5, 1912, to Mr. Henry Pommer, this city, with reference to the business of the Palace trading stamps and to certain letters addressed by you to merchants in this city, who have lately subscribed for such stamps. Also, I have been advised of the actions of the Albany agent of the Sperry & Hutchinson Co., one Jordan, who has lately busied himself slandering Mr. Pommer, intimidating his customers and generally interfering with the Palace trading stamp business. Mr. Pommer has been and now is refraining from and will continue to refrain from fraudulently interfering with the trading stamp business of the Sperry & Hutchinson Co. and it is expected and insisted that the Sperry & Hutchinson Co. likewise refrain from fraudulently interfering with the business of the Palace trading stamps or steps will be taken to compel the Sperry & Hutchinson Co. and its agents, particularly Jordan, so to act. The only kind of competition the Sperry & Hutchinson Co. will receive from Mr. Pommer is honest competition and that the Sperry & Hutchinson Co. should welcome instead of trying to stifle. The merchants who have received your letters with reference to their having installed Palace trading stamps have, I am informed, been generally advised by their respective counsel that they have in no wise rendered themselves liable to the Sperry & Hutchinson Co., and that the alleged contract you claim they have violated is invalid, unlawful and contrary to public policy.

"Yours very truly,                    Leopold Minkin."

Thereupon and on April 23, 1912, Mr. Jones wrote as follows:

"New York, April 23, 1912.

"Leopold Minkin, Esq., De Graaf Building, Albany, N. Y.—Dear Sir: Replying to yours of 22d, it seems strange that a responsible attorney like you should maintain that the trading stamp business as carried on under contract is invalid and contrary to public policy, in view of the fact that seventeen courts of appeal and numerous federal courts have passed upon the Sperry & Hutchinson Company's contract and have declared that contract and business perfectly legal. It may be that your letter was written without due consideration. Kindly read: 109 N. Y. 389; 72 App. Div. 308; 102 App. Div. 103, for New York cases. 134 Fed. 691; 145 Fed. 659; 135 Fed. 833; 161 Fed. 219; 137 Fed. 992. A short review of these cases will indicate to you that I am absolutely correct in my statement that Mr. Pommer is unlawfully interfering with the contracts and business of the Sperry & Hutchinson Company, and while I should be sorry to cause him the expense and trouble of litigation, I shall be compelled to take legal action to protect the Sperry & Hutchinson Company's business, if any further interference on his part is brought to my attention.

"Mr. Pommer has no right to interfere with the contracts of the Sperry & Hutchinson Company nor to induce any merchant under contract to violate the same, nor to exchange his stamps for 'S. & H.' stamps or traffic in 'S. & H.' stamps in any manner. If he violates our rights in these particulars we shall have to teach him how to respect such rights.

"Very truly yours,                              John Hall Jones."

Here was notice that all merchants in Albany who were giving out the "S. & H. Green trading stamps" were under contracts with Sperry & Hutchinson Company for specific periods to use such trading stamps exclusively with negative covenant not to use those of other concerns. As matter of fact this statement was incorrect, as in one or more cases the contract did not so provide, the exclusive use clause having been stricken out, and in one or more instances there was no written contract at all and no verbal contract for any particular time and no agreement not to use the trading stamps of other concerns. Sperry & Hutchinson Company, the complainant here, knew this, and was evidently endeavoring to prevent the defendant Pommer from supplying his stamps to any one who was giving out the "S. & H. Green trading stamps" whether the merchant was under exclusive contract or not.

This suit was commenced August 12, 1912. June 2, 1912, there appeared in the New York World, published in New York City, the following:

"Sues for $725,699 Trading Stamp 'Gifts.'

"Great A. & P. Co. Says Sperry & Hutchinson Gave 59 Cents a Unit Instead of $1.18.

"Suit for $725,699 was begun yesterday in the New Jersey Supreme Court, at Newark, by the Great Atlantic and Pacific Tea Company, against the Sperry & Hutchinson Company. The tea company alleges that the defendant concern violated a contract made July 25, 1909, to give $1.18 worth of merchandise for 990 stamps, representing $99 in purchases of customers.

"The tea company asserts that since it entered into the contract, less than three years ago, it has used 725,669,000 Green trading stamps, for which it has paid the defendant company $1,451,338.

"The tea company says the stamp company only gave 59 cents of value in merchandise for 990 stamps, or only one-half the value its contract called for. The stamps were given out to the customers of the chain of stores operated by the plaintiff corporation.

"Chief Justice Gummere dismissed an application for a bill of particulars made in behalf of the Sperry & Hutchinson Company, yesterday, and directed its counsel to proceed through interrogatories."

Later H. J. Pommer put up in the window of their place of business a clipping of this article, but on notice immediately took it down. Two or three merchants using the Green stamps received a copy of the paper with this article blue penciled. It is not denied that a suit as stated was commenced and that the allegations set out in the article were contained in the complaint in that action. In point of fact the premiums given out in Albany for 990 stamps are worth from $1.50 to $2 or more. The complainant here would have us infer that defendants intended to represent to merchants using the Green stamps by posting up and sending this article (if defendants did send it) that the Sperry & Hutchinson premiums for a 990 stamp collection, one book, was worth only 59 cents, when in fact it was worth five or six times that. There is no proof in this case that the Pommers did not believe

all the statements made in that article were true and that the allega-
tions made by the tea company against Sperry & Hutchinson Company
were true.

April 26, 1912, in the Times Union, published at Albany, the Pom-
mers had an advertisement:

"Patronize the stamp made in Albany; ask your grocer, the butcher, the
dry goods, the clothier, the shoe man and other dealers and have the books re-
deemed at Pommers big furniture and carpet store. Ask these merchants for
them. (Here follows a list of names of merchants with their addresses in
Albany under a heading giving their business.) Pommers furniture, carpets,
rugs, etc. 153–159 So. Pearl St. Almost everybody has had experience with
the old method stamps. Nuf Ced."

In the list of names contained in this advertisement appear several
who were receiving the "S. & H. Green trading stamps," and some
of them were under contract with the Sperry & Hutchinson Company.
William Hannay was one of these, and he testified, in substance, that
Pommer called to see about his using Palace stamps, and he (Hannay)
told Pommer of his contract and that he was not entitled to use the
stamps.

"So he left a pad with me until I could find out whether I could use them
or not, and I found out I couldn't, and so I sent them back. * * * I told
Pommer if I found out I had a right to use them I would use them."

Also that it was a long time before they had any further communi-
cation and before Pommer was advised that Hannay was not going to
use them. Said nothing about the advertisement of Pommer until it
was in a dozen times and then sent word and it was not put in any
more. (Meaning his name was not published any more.) Morris
Sherman was another merchant who had a contract in fact, but he says
he did not know he had such a contract, and so when asked to put in
Palace stamps said nothing of a contract. Says Pommer wanted to
sell him a pad of stamps, and he said he would not buy them because
he did not know whether people would want them, but Pommer could
leave a pad, and if people called for them he would give them out and
pay for them. Several of the merchants who were taking the Green
stamps when called upon and requested to put in Palace stamps also
simply stated they had a contract, but there is no evidence they claimed
or stated it to be a contract to take the Green stamps exclusively. De-
fendants' agent generally explained that the Pommer Palace stamps
were cheaper than Green stamps and that the Pommers proposed to
advertize their customers. All the witnesses state that Pommer and
his agents made no false or untrue statements by way of inducement
to introduce Palace stamps or otherwise.

May 14, 1912, defendants published an advertisement in the Knicker-
bocker Press, published and circulated in Albany, stating:

"These dealers will give you Palace stamps. Begin this very morning.
Say to your dealer, 'I want Palace trading stamps for they are many times
the best.'"

Then follows a number of names with address and business and
under each, "We give Palace stamps." Some of these merchants did
give Palace stamps. A few in so doing violated the terms of the con-

tract they had signed in ignorance of the condition. In one or two cases a suit was brought against the merchant either for damages or to enjoin his using the Palace stamps, but same did not come to trial, as the merchant discontinued using the Palace stamps and consented to an injunction enjoining him from using them. There seems to have been "consent decrees" in effect compelling specific performance of a contract not to use trading stamps other than the Green stamps put out by the Sperry & Hutchinson Company. It also appears from the evidence that the agent of the Pommers in Albany had been in the employ of Sperry & Hutchinson Company, and, it is claimed, he was familiar with the business methods of that company, including its custom of making these so-called "exclusive contracts" with the merchants who purchased and put out the S. & H. Green trading stamps. It is contended therefore that defendants Pommer, who issue the Palace stamps, must have known, or are charged with knowledge that all merchants who put out these Green stamps were under these "exclusive contracts" and that the mere offer to them of the Palace stamps, or request that they put in and use the Palace stamps, or the sale to them of Palace stamps, was inducing them to break their contracts with the complainant, or an effort so to do, and a wrongful act which should be enjoined, although no artifice, untruth, or false statement or fraud was resorted to or used. The contention is that this is especially true inasmuch as the Pommers offer to sell their Palace stamps for less money than the Green stamps are sold for and do more and better advertising.

In Angle v. Chicago, St. Paul, etc., Railway, 151 U. S. 1, 13, 14 Sup. Ct. 240, 245 (38 L. Ed. 55) it is held:

"If one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer. * * *

"Wherever a man does an act which in law and fact is a wrongful act," and injury to another results from it as a natural and probable consequence, "an action on the case will lie."

And at page 13 of 151 U. S., at page 245 of 14 Sup. Ct. (38 L. Ed. 55), the court said:

"It has been repeatedly held that if one maliciously interferes in a contract between two parties, and induces one of them to break that contract to the injury of the other, the party injured can maintain an action against the wrongdoer. Green v. Button, 2 Cr. Mees. & R. 707, in which the defendant, by falsely pretending to one party to a contract that he had a lien upon certain property, prevented such party from delivering it to the plaintiff, the other party to the contract, and was held responsible for the loss occasioned thereby."

In the case now before this court all the witnesses concur in saying that no false or untrue statements were made, and I do not find that any deceit was practiced. It cannot be denied that in two or three instances the defendants did urge the merchants to take and use the Palace stamps, and the case is reduced to the simple proposition: Did such requests, the advantages of using the Palace stamps being pointed out to the merchants, amount to an unlawful attempt to induce

the merchants to break their contracts? Can malice be implied from what was said and done? It was clearly lawful for the Pommers to establish this trading stamp business in the city of Albany and secure custom by lawful means, and I see nothing wrong in putting out Palace stamps for less money than the Sperry & Hutchinson Company charged for theirs. It was perfectly proper for the Pommers to do any amount of free advertising for themselves and their customers, and I know of no law which would close their mouths to the truth when conversing with merchants who were putting out the S. & H. Green stamps. Some of the cases speak of this business as an advertising medium, and some say it is a business "sui generis," and intimate that it has special privileges. Conceding this, it seems to me that the well-known rules of law are to be applied. There may be free and untrammeled competition in this business, as in others, so long as there is no fraud practiced and no unfair competition and no unlawful interference with valid contracts. Both the Sperry & Hutchinson Company and the Pommers have stores where they keep a stock of goods so selected as to be desired and sought after by householders and housewives. These goods are purchased at wholesale, and the purpose is to dispose of them at a profit. Neither the Sperry & Hutchinson Company nor the Pommer Company is a philanthropist or a benefactor of the human race. Both are seeking to dispose of their wares for cash and at a profit. True, neither sells to customers for cash, but each delivers property to customers in exchange for stamps which it has put out or sold for cash and which stamps it has promised to redeem in goods. To aid itself in so disposing of its goods, the co-operation of other merchants is sought and enlisted who really pay the money therefor and who, it seems, are able to do so because of the advertising and increased cash trade they get. Each company is at liberty to fix the price of its stamps and the amount of advertising it will do and the character and value of the article (so-called premium) it will give in redemption of its stamps or promises to pay.

These stamps are a sort of nonnegotiable promissory note payable on demand in property to be selected from a certain list. These notes are sold for cash and certain free advertising. The exclusive contracts bind these merchants not to use the notes or stamps of the competing company. The one obtaining these contracts seeks, of course, to monopolize the business, in this line, of the merchant. The merchant entering into such a contract binds himself not to use other stamps, and hence he limits his trade so far as he gives out stamps to those who are collecting that particular stamp, but he in no way limits his general trade. He sells to all would-be customers who find the goods desired and who pay the price and do not desire stamps. The merchant does not bind himself not to deal with or sell goods to those who are collecting some other stamp, but he does bind himself not to give out that other stamp, and hence he binds himself to lose the trade of would-be purchasers of goods who desire other stamps and refuse to purchase his merchandise for the reason they cannot get the stamps. This, of course, is a restraint of trade to an extent. To an extent he limits his trade. I think the contracts referred to legal and binding between

the parties thereto and not unlawful as in restraint of trade. The Legislature of the state of New York on at least two occasions has attempted by legislation to blot out this trading stamp business, but the legislation was pronounced outside of the police power and unconstitutional. I do not think it at all strange that questions were raised as to the legality of these exclusive contracts and the fact that the question was raised as shown by the evidence is no evidence to my mind that defendants intended any unlawful interference with the complainant's business. So far as the advertisements are concerned, it appears that these were corrected. If a merchant under one of these exclusive contracts sees fit voluntarily to disregard it and take Palace stamps, he has the privilege so to do, taking the chances of suit, and defendants have the right to furnish them to any merchant asking for them so long as they do nothing to induce or procure such merchant to break the contract.

This court will not undertake to enjoin defendants from merely furnishing Palace stamps to any merchant who desires them, or from merely describing the merits of the Palace stamps. To knowingly and intentionally advertise in the public press the names of Sperry & Hutchinson Company's customers as takers and users of the Palace stamps, when such customers were not, would injure the complainant's business, and if the advertising were persisted in such injury would hardly be capable of adequate remedy in a court of law. So persistent solicitation of complainant's customers generally to take and put in the Palace stamps, such solicitors knowing that such customers are under contract to take and use the S. & H. Green stamps only, if successful, would work an injury to complainant's business and constitute an unlawful interference with such business, and actions at law against such customers would not afford an adequate remedy. But taking all the evidence and considering all that was said and done under the circumstances shown, I am not satisfied that defendants intended any unlawful interference with the complainant's business. Clearly it was not unlawful for customers who did not know they were under contract to take the Green stamps exclusively to take and use the Palace stamps, and I do not think the defendants were bound to assume, contrary to the fact, that all merchants using the S. & H. Green stamps were under contract to use same exclusively. I am not prepared to hold that defendants in any way violated complainant's rights by expressions of opinion that such exclusive contracts are in restraint of trade and void or in violation of the so-called Sherman anti-trust law. There is no evidence that such expressions were not made in good faith.

I am of the opinion that full and complete justice will be done in this case if defendants file a stipulation:

1. Not to advertise any person, corporation, or firm under contract with the Sperry & Hutchinson Company to take and put out its S. & H. Green stamps exclusively, as taking, using, and giving out to customers in the city of Albany the Palace stamps who is not actually so doing at the time.

2. To refrain from soliciting the customers of complainant in the city of Albany under exclusive contract with complainant to use their Green stamps only, to take and give out Palace stamps, provided complainant first notifies defendants in writing of the names and addresses of all its said customers who are under such exclusive contract.

If such stipulation is executed, served, and filed within 30 days from November 1, 1913, there will be a decree dismissing the bill of complaint without costs, subject to the right of the court to open such decree at any time within two years and enter a decree with costs enjoining such acts on satisfactory proof that the stipulation is not being observed. If such stipulation is not executed, served, and filed within said 30 days, there will be a decree enjoining such acts.